**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 11-CIV-62424-SCOLA**

CHRISTINA ULBRICH, as an individual and as a
Representative of the classes,

        Plaintiff,

v.

GMAC MORTGAGE, LLC, formerly known as
GMAC MORTGAGE CORPORATION, and
BALBOA INSURANCE SERVICES, INC.

        Defendants.
_____/

**DEFENDANT BALBOA INSURANCE SERVICES, INC.'S MOTION TO DISMISS THE COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Defendant Balboa Insurance Services, Inc. ("BIS") respectfully moves this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the claim in the Complaint against BIS. Plaintiff has failed to allege a claim for unjust enrichment against BIS. Plaintiff has not and cannot allege that she conferred a direct benefit on BIS or that it would be unjust for BIS to receive compensation for its alleged role in providing insurance for Plaintiff's property when she failed to maintain insurance on her own.

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

Plaintiff's Complaint is the latest in a series of lawsuits challenging the lender-placed insurance industry and seeking to demonize mortgage lenders' legitimate and justified right to protect their investments. Lender-placed insurance is a product that exists to protect mortgaged properties when individual homeowners fail to meet their obligations to maintain homeowners' insurance. Ms. Ulbrich's mortgage agreement included such a provision and by signing the agreement she agreed to protect her investment, and that of the bank, by maintaining homeowner's insurance. In her mortgage agreement Ms. Ulbrich also acknowledged that if she failed to maintain voluntary insurance, the Lender would obtain insurance coverage for the property "at Lender's option and Borrower's expense [and] the cost of insurance coverage so

obtained might significantly exceed the cost of insurance that Borrower could have obtained." (Compl., Nov. 14, 2011, ECF No. 1, Ex. 2 § 5.)

If all borrowers maintained insurance and ensured that their mortgage lenders and/or servicers had current records of that coverage, lender placed insurance would not exist. However, because some borrowers fail to fulfill their contractual obligations, mortgage lenders/servicers have to track whether each borrower maintains the appropriate levels and types of insurance coverage. When borrowers do not, mortgage lenders/servicers have no choice but to obtain insurance to protect their substantial investments in the borrowers' properties.

Lender-placed insurance is a vital part of the mortgage lending industry. It is intended as a stop-gap when borrowers fail to heed the multiple notifications provided to them by their voluntary insurers and their mortgage lenders/servicers to maintain the voluntary coverage required by their mortgage contracts or equivalent agreements. Without it, borrowers would be subject to financial devastation and ruin in the event of damage or destruction to their homes. Moreover, without this failsafe, lenders would not lend money to most borrowers or would do so only at drastically higher interest rates or with significantly more restrictions. Mortgage lenders/servicers' need to maintain continuous insurance coverage is particularly acute in regions like South Florida where hurricanes or tropical storms causing catastrophic property damage are not uncommon and are impossible to predict.

Although most, if not all, mortgage lenders/servicers have some process for obtaining lender-placed insurance, the specific terms and practices vary from company to company and borrower to borrower. The Complaint, however, relies on generalized allegations from distorted news reports about the industry as a whole and the practices of lenders and servicers unaffiliated with the named Defendants. The Complaint fails to allege specific wrongdoing by the named Defendants as to the named Plaintiff, Christina Ulbrich. Importantly for this motion, the alleged facts as to Defendant BIS are woefully insufficient to state a claim for unjust enrichment. At most, Plaintiff has alleged that she was inconvenienced and annoyed by her interactions with the Defendants. The law does not provide a remedy for inconvenience or annoyance. Accordingly, the claim against BIS should be dismissed.

## PLAINTIFF'S ALLEGATIONS[1]

Plaintiff Christina Ulbrich alleges that she obtained a loan for $201,000 from GMAC Mortgage Corporation secured by a mortgage on residential property in Fort Lauderdale, Florida, on August 4, 2003.  (Compl. ¶ 19.)  Defendant GMAC Mortgage, LLC is the successor in interest to GMAC Mortgage Corporation and the current servicer of Plaintiff's mortgage loan.  (*Id.*)  Plaintiff's mortgage obligates her to "keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term 'extended coverage,' and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance."  (Compl. Ex. 2 § 5.)[2]  The mortgage further specifies that the coverage will be maintained in amounts and for the periods that Lender requires and that the insurance Lender requires "can change during the term of the Loan."  (*Id.*)  Additionally, as stated above, the mortgage agreement stipulates that if Plaintiff fails to maintain voluntary insurance, the Lender will obtain insurance coverage for her "at Lender's option and Borrower's expense [and] the cost of insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained."  (*Id.*)

At various times, Plaintiff alleges that she received notifications, purportedly from GMAC, stating that GMAC had received no evidence that Plaintiff had current insurance.  (*See, e.g.*, Compl. ¶¶ 22, 27, 39.)  The notifications further stated that if Plaintiff failed to provide a copy of a current insurance policy, then GMAC would purchase a policy and bill Plaintiff for the cost.  Plaintiff acknowledges that she received such notifications regarding hazard, windstorm, and flood insurance.

Plaintiff alleges that she first received a notification from GMAC about windstorm insurance on December 19, 2010.  This notification informed Plaintiff that her existing hazard insurance policy did not include coverage for wind and hailstorm damage and that if Plaintiff did

---

[1] These allegations are taken from Plaintiff's Complaint.  Defendant BIS does not admit them by including them here, but merely references them for purposes of resolving this motion.

[2] This Court may properly consider the underlying documents in this action without converting this motion to dismiss into a motion for summary judgment because the documents are "(1) central to the plaintiff's claim and (2) undisputed." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (holding that there was no error when the district court considered a contract that was central to the dispute on a motion to dismiss).  Indeed, the Eleventh Circuit has noted that the rules for considering 12(b)(6) motions permit consideration of allegations within their context. *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999).

not provide proof of such coverage, then GMAC would purchase $277,871 of wind insurance coverage for her at an annual premium cost of $9,708.12.[3] (*Id.* ¶ 27.) Plaintiff failed to purchase wind coverage and does not allege that she took any action in response to this notification. Plaintiff received a subsequent letter from GMAC on February 2, 2011 saying substantially the same thing. (*Id.* ¶ 28.) Again, Plaintiff does not allege that she took any action in response. On March 23, 2011, having received no proof of wind coverage from Plaintiff, GMAC sent a third letter titled "Notice of Windstorm Coverage Placement." In this letter, GMAC notified Plaintiff that it had obtained windstorm coverage for her property through BIS with an effective period of October 1, 2009 to October 1, 2010. (*Id.* ¶ 29.) Plaintiff argues that this policy was inappropriately obtained, but also admits that the 2009-2010 wind policy was later cancelled from inception and all charges for it were refunded to her. (*Id.* ¶ 45.) Accordingly, Plaintiff is out of pocket no money in connection with the first wind policy.

On March 23, 2011, GMAC sent Plaintiff a windstorm insurance renewal letter stating that the insurance GMAC had lender-placed had expired, but the policy would be renewed if Plaintiff did not provide proof that she had voluntary insurance. (*Id.* ¶ 31.) Plaintiff did not do so, and a month later was notified that, as forewarned, GMAC had renewed the wind policy for the period October 1, 2010 until October 1, 2011 at an annual premium cost of $9,673.80. (*Id.* ¶ 32.)

The premiums for both lender-placed wind insurance policies were charged by GMAC to Plaintiff's mortgage escrow account, but the Complaint indicates that Plaintiff ultimately has not paid out of pocket for either. (*Id.* ¶¶ 37, 45, n.7.) As noted, the first windstorm policy was cancelled, and Plaintiff was refunded any premiums paid. (*Id.* ¶ 45.) After the premium for the second wind policy was added to Plaintiff's account, she was no longer able to pay the full

---

[3] Plaintiff contends that her mortgage does not require her to maintain separate wind coverage and alleges that a GMAC representative expressly confirmed this understanding in June 2003. (Compl. ¶ 25, Ex. 6.) This alleged conversation took place prior to the origination of the mortgage loan at issue in August 2003. (*Id.* ¶ 19.) The loan that was originated on August 4, 2003 required wind coverage from inception. Even if it had not been required at the time of origination, Plaintiff does not dispute that the terms of her mortgage agreement permitted the Lender to change the insurance requirements during the term of the loan.

amount of her mortgage payment each month and GMAC would not accept partial payment. (*Id.* ¶ 37, n.7.)  As a result, Plaintiff has not paid for the second lender-placed wind policy.[4]

Finally, Plaintiff alleges that GMAC improperly obtained flood insurance for her property in 2011 despite the fact that Plaintiff had $250,000 worth of flood coverage on her property.  (*Id.* ¶¶ 36-37.)  The cost of the lender-placed flood insurance was also added to Plaintiff's mortgage escrow account by GMAC initially, but it too was later cancelled and refunded when GMAC came to understand that Plaintiff's property was covered by a voluntary flood policy.  (*Id.* ¶ 45.)

BIS' alleged role in the above activities was limited.  The Complaint alleges broadly that BIS "actively facilitated and participated in GMAC's abusive force-place insurance practices," (*id.* ¶ 54), but BIS' only alleged "active[] facilitat[ion] and participat[ion]" was the placement of the windstorm insurance policies.  Plaintiff alleges that the windstorm insurance was obtained through BIS, that BIS accepted premium payments for the policies, and that BIS paid commissions to GMAC in connection with these policies.  (*Id.* ¶¶ 55-56.)  Plaintiff further alleges that BIS performed insurance tracking services for GMAC and that the notification letters were sent by BIS on GMAC's behalf.  (*Id.* ¶¶ 57-58.)  Plaintiff does not allege that BIS had any involvement with the placement of the flood policy.

While Plaintiff contends that BIS is liable for unjust enrichment because of its participation in GMAC's lender-placed insurance program, her allegations are based primarily on generalized statements and allegations set forth in an *American Banker* article from 2010 discussing the lender placed insurance industry as a whole.  Plaintiff's Complaint assumes that BIS' practices are the same as those of all other lender-placed insurers or agents.[5]  In fact, BIS does not and did not perform insurance tracking services for GMAC, BIS does not and did not send notification letters to borrowers on GMAC's behalf, and BIS does not and did not pay any commissions to GMAC in connection with the lender-placed windstorm insurance.

---

[4] Plaintiff has now obtained voluntary windstorm insurance, obviating the need for GMAC to obtain additional lender-placed wind insurance for the property.  (Compl. ¶ 34 n.6.)

[5] The *American Banker* article, Exhibit 1 to the Complaint, does not specifically discuss Balboa Insurance Services, nor does it state or even suggest that any member of the Balboa group pays commissions to GMAC.  The only commissions discussed in the article are those paid by a subsidiary of Assurant to EverInsurance, a subsidiary of EverBank's servicing arm, and those paid to a subsidiary of Wells Fargo Bank.  (*See id.* ¶ 30  n.4.)

In addition to the claim on her own behalf, Plaintiff asserts claims on behalf of a putative "Balboa Sub-Class" consisting of all persons in the nationwide lender-placed class whose lender-placed policies were purchased by GMAC through Balboa.

## MOTION TO DISMISS STANDARD

To survive a motion to dismiss, a plaintiff's pleadings must contain factual allegations that are "enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, a plaintiff's claim must be "plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). While the allegations in the Amended Complaint are assumed to be true, the allegations must amount to more than mere labels and conclusions or a mere formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 545. Legal conclusions are not entitled to an assumption of truth. *Iqbal*, 129 S. Ct. at 1949-50.

## ARGUMENT

To state a claim of unjust enrichment against BIS, Plaintiff was required to plead that: (1) Plaintiff conferred a benefit to BIS, (2) BIS had knowledge of the benefit, (3) BIS accepted or retained the benefit conferred, and (4) under the circumstances, it was inequitable for BIS to retain the benefit without paying for it. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009) (citing *Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. Dist. Ct. App. 2006)).[6] Plaintiff's allegations fall short because the alleged facts do not establish that she conferred a direct benefit on BIS or that it would be inequitable for BIS to retain any benefit she had conferred.

### I. Plaintiff Has Failed To Allege That She Conferred A Benefit, Direct Or Otherwise, On BIS.

Here, the benefit Plaintiff alleges that she conferred on BIS is a portion of her lender-placed windstorm insurance premium payments. This allegation is inadequate for two reasons. First, taking the alleged facts to be true, Plaintiff's net payments for windstorm insurance total $0. The first lender-placed windstorm policy was ultimately cancelled and Plaintiff was reimbursed for any premium payments made. (Compl. ¶ 45 n. 7.) As to the second windstorm policy, Plaintiff alleges that she was unable to increase her monthly mortgage payments to cover

---

[6] Because the Court is exercising diversity jurisdiction, Florida law applies. *See Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 412 F.3d 1224, 1227 (11th Cir. 2005).

the charges added to her escrow account. Because GMAC did not accept partial mortgage payments from Plaintiff after the charges for this policy were added to her escrow account, (*Id.* n. 7), Plaintiff has not paid for any portion of the premiums charged for the second LPI policy. Accordingly, Plaintiff has conferred no benefit on BIS (or any other entity) in connection with either wind policy. What is more, Plaintiff does not allege that BIS was responsible for obtaining any of the other lender-placed policies. (*Id.* ¶¶ 21-24 (no mention of BIS in connection with hazard insurance policy); ¶ 40 (alleging that GMAC obtained flood insurance through Southwest Business Corporation and not BIS).) Because Plaintiff has not actually paid any premiums, no portion of her payments could have been transferred to BIS, and Plaintiff did not confer any benefit on BIS. The possibility that Plaintiff may pay for a portion of the premiums in the future is insufficient to state a claim now. *See, e.g.*, *Iglesia Cristiana El Buen Samaritano Inc. v. Guardian Servs. LLC*, No. 11-21888-CV, 2011 WL 5854640, at *4 (S.D. Fla. Nov. 21, 2011) (dismissing claim for unjust enrichment for lack of standing where the claim was based on conduct that had yet to occur and might never occur at all).

Second, the alleged benefit, if it had been transferred to BIS, could only be characterized as indirect. To be liable for unjust enrichment, a defendant must have received a benefit that can be directly traced back to the plaintiff. *See Huntsman Packaging Corp. v. Kerry Packaging Corp.*, 992 F. Supp. 1439, 1446 (M.D. Fla. 1998) (noting that the benefit conferred on the defendant must be direct to prevail on a claim of unjust enrichment); *West Coast Life Ins. Co. v. Life Brokerage Partners LLC*, No. 08-80897, 2009 WL 2957749, at *11 (S.D. Fla. Sept. 9, 2009) (dismissing claim because allegation that defendant "received compensation for its role in the transactions" was insufficient). Florida case law makes it clear that a plaintiff must plead a direct correlation between his/her action and the benefit conferred on the defendant to survive a motion to dismiss. *See Century Senior Servs. v. Consumer Health Benefit Ass'n, Inc*, 770 F. Supp. 2d 1261, 1266-67 (S.D. Fla. 2011) (dismissing unjust enrichment claim where any benefit to defendant "was likely indirectly derived through other corporations doing business with [plaintiff]"); *see also Virgilio v. Ryland Grp., Inc.*, 6:08-CV-815-ORL-31GJK, 2009 WL 320857, at *5 (M.D. Fla. Feb. 9, 2009) (dismissing claim for failing to allege direct benefit where plaintiff did not purchase home from developer but developer received 1.5% of gross sales price). Direct contract or contractual privity is not required, *see Williams v. Wells Fargo Bank N.A.*, No. 11-21233-CIV, 2011 WL 4368980, at *9 (S.D. Fla. Sept. 19, 2011) (citing *Romano v.*

*Motorola Inc.*, No. 07-CIV-60517, 2007 WL 4199781, at *2 (S.D. Fla. Nov. 26, 2007) (direct contact not necessary for unjust enrichment claim); *Zaki Kulaibee Establishment v. McFlicker*, No. 08-60296-Civ, 2011 WL 1559791, at *9 (S.D. Fla. Apr. 25, 2011) (contractual privity not required to establish direct benefit); *Stermer v. SCK Solutions*, LLC, No. 08-61571-CIV, 2009 WL 1849955, at *6 (S.D. Fla. June 26, 2009)), but it must be possible from the alleged facts to trace the path of the benefit from the plaintiff to the defendant and to identify the contours of the benefit conferred. *See West Coast Life Ins. Co.*, 2009 WL 2957749, at *11.

The Complaint alleges only that "Balboa accepted handsome premium payments for . . . policies that were force-placed by GMAC." (Compl. ¶ 55.) The Complaint does not explain when, how, or by whom BIS was paid or the amount that BIS was paid and how that amount relates to the premiums charged to Plaintiff. Plaintiff was billed by GMAC and any payments she made – had she made any – presumably would have been made to GMAC, although the Complaint is not clear on this point. Plaintiff has identified no basis for concluding that any portion of her payments would have been transferred to BIS aside from general pronouncements in an *American Banker* article regarding practices of other lender-placed insurers. (*See id.* ¶ 110; Exhibit 1.) These allegations are insufficient to establish that if Plaintiff had paid any portion of her premium benefits, she would have thereby conferred a direct benefit on BIS.

Another lender-placed insurance case from this district, and now before this Court, *Williams* 2011 WL 4368980, at *9, where the court denied a motion to dismiss an unjust enrichment claims and found that a direct benefit had been alleged, is distinguishable. The *Williams* plaintiffs alleged that the borrowers paid premiums to their mortgage servicer and that the insurance agent then received a commission from the amount paid by the plaintiffs that was calculated as a percentage of the borrowers' premium payments. *Id.* at *10. Similar factual details are absent from Plaintiff Ulbrich's Complaint.[7] Plaintiff's Complaint contains no details regarding the payment arrangement here. Again, Plaintiff fails to allege when, how, by whom, or how much BIS was paid or how that amount relates to the premiums charged to Plaintiff. As a result, it does not contain adequate facts to allege that she conferred a direct benefit on BIS.

---

[7] Notably, another decision from a Florida district court held that similar allegations that a defendant received a payment from a third party that was a percentage of an amount paid by the plaintiff to that third party were insufficient to constitute a direct benefit. *See Virgilio*, 2009 WL 320857, at *5.

## II.     Plaintiff Has Failed To Allege That It Would Be Inequitable For BIS To Retain Any Portion of the Insurance Premiums.

Even if some non-trivial percentage of Plaintiff's premium payments (which she never paid) had been distributed to BIS, Plaintiff has not alleged facts to establish that BIS' retention of this money would have been unjust.  To the contrary, by obtaining a windstorm insurance policy for Plaintiff and thereby ensuring that the collateral for her mortgage loan, *i.e.*, her home, was covered for any losses resulting from hurricanes and other wind events, BIS conferred a benefit on Plaintiff.  Florida law is clear that there can be no claim for unjust enrichment when adequate consideration is provided for the benefit conferred.  *Baptista v. JPMorgan Chase Bank, N.A.*, 640 F.3d 1194, 1198 n.3 (11th Cir. 2011) (citing *Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331-32 (Fla. Dist. Ct. App. 2007)).  Because Plaintiff had the ability and opportunity to avoid the windstorm insurance premiums by heeding the multiple notifications she received, her claim for unjust enrichment fails.  *See Baptista*, 640 F.3d at 1198 n.3 (affirming dismissal of unjust enrichment claim because plaintiff received a benefit for the fee imposed and could have avoided the fee by not accepting the benefit); *see also Lass v. Bank of Am., N.A.*, No. 11-10570, 2011 WL 3567280, at *7 (D. Mass. Aug. 11, 2011) (dismissing unjust enrichment claim in lender-placed insurance context because borrower was given multiple opportunities to purchase voluntary coverage and was warned that lender-placed insurance could be more expensive).

Plaintiff's allegations are precisely the same as those presented in *Lass*, where the court granted the defendants' motion to dismiss and held that the borrower had not pleaded a claim of unjust enrichment against the lender-placed flood insurance carrier.  The court reasoned that because the borrower had notice and a fair opportunity to decline the benefit of the LPI policies at issue, she "impliedly accepted the forced-placement of insurance, including any fee associated therewith" by failing to obtain her own insurance.  *See* 2011 WL 3567280, at *7.  While the *Lass* analysis was rejected in *Williams*, the allegations in *Williams* focused on the alleged unreasonable cost of the lender-placed insurance at issue and not on the existence and use of lender-placed insurance generally.  *See* 2011 WL 4368980, at *11.  Plaintiff Ulbrich's unjust enrichment claim, in contrast, rests primarily on her allegation that the policies provide no real value to borrowers and that BIS used improper means to obtain the lender-placed business from

9

GMAC.[8] (Compl. ¶ 114.) In addition, Plaintiff Ulbrich, like the *Lass* plaintiffs, alleges that windstorm insurance was not required by her mortgage and provided no benefit to her.[9] Plaintiff is not conceding that GMAC was authorized to force place insurance coverage, as the plaintiffs in *Williams* did, nor is she challenging only the cost of the lender-placed policies. Plaintiff's arguments cannot be reconciled with the terms of her mortgage agreement. Analogous arguments were rejected as a basis for unjust enrichment claims in *Lass*, and the same outcome is warranted here.

## CONCLUSION

For the foregoing reasons, Balboa Insurance Services respectfully requests that this Court grant its Motion to Dismiss and dismiss Plaintiff's claim for unjust enrichment.

---

[8] Plaintiff ultimately was only charged for the windstorm policy in effect from 2010 to 2011 and she was notified that this policy was in effect before it expired. (Comp. ¶ 32, Ex. 11.) Additionally, even an expired policy is not without benefit because if a property was damaged during the policy's effective period, claims brought after the fact by the policyholder would be entitled to payment.

[9] Plaintiff's allegation that the lender-placed windstorm policies provided no benefit whatsoever further distinguishes her arguments from those of the plaintiffs in *Williams*. In *Williams*, the court construed the plaintiffs' argument to be that any benefit from the lender-placed policies was disproportionate to their cost and thus could not constitute adequate consideration. 2011 WL 4368980, at *11. The court further concluded that the adequacy of the consideration should not be evaluated on a motion to dismiss. (*Id.*) In this case, the alleged facts plainly contradict Plaintiff's allegation that she received no benefit, and she has not alleged that the windstorm policy itself was overpriced. Accordingly, the court can dismiss the unjust enrichment claim without having to evaluate whether the policy premiums were appropriate for the amount of coverage provided.

Dated: January 13, 2012

Respectfully submitted,

s/Brian W. Toth
William N. Shepherd
Florida Bar No. 88668
william.shepherd@hklaw.com
**Holland & Knight LLP**
222 Lakeview Avenue, Suite 1000
West Palm Beach, FL 33401
Telephone: (561) 650-8338
Facsimile: (561) 650-1608

Brian W. Toth
Florida Bar No. 57708
brian.toth@hklaw.com
**Holland & Knight LLP**
701 Brickell Avenue, Suite 3000
Miami, Florida 33131
Telephone: (305) 789-7510
Facsimile: (305) 789-7799

Robyn C. Quattrone (*pro hac vice*)
rquattrone@buckleysandler.com
Katherine Halliday (*pro hac vice*)
khalliday@buckleysandler.com
**BuckleySandler LLP**
1250 24th Street NW, Suite 700
Washington, DC 20037
Telephone: (202) 349-8000
Facsimile: (202) 349-8080

*Attorneys for Balboa Insurance Services, Inc.*

## Certificate of Service

I certify that a true and correct copy of the foregoing was served using CM/ECF on January 13, 2012, on all counsel or parties of record on the Service List below.

                                            s/Brian W. Toth
                                            Brian W. Toth

## Service List

E. Michelle Drake
drake@nka.com
Kai Richter
krichter@nka.com
Timothy C. Selander
selander@nka.com
Nichols Kaster, PLLP
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 338-4878
*Attorneys for Christina Ulbrich*

Erika Deutsch Rotbart
edrotbart@dralawfirm.com
Deutsch Rotbart & Associates PA
4755 Technology Way
Suite 106
Boca Raton, FL 33431
Telephone: (561) 361-8010
Facsimile: (561) 361-8086
*Attorneys for Christina Ulbrich*

Jennifer Cohen Glasser
jennifer.glasser@akerman.com
Akerman Senterfitt
Suntrust International Center
One Southeast Third Avenue
25th Floor
Miami, FL 33131
Telephone: (305) 374-5600
Facsimile: (305) 374-5095
*Attorney for GMAC Mortgage, LLC*

Henry F. Reichner
hreichner@reedsmith.com
Joe Nguyen
jnguyen@reedsmith.com
Reed Smith, LLP
1650 Market Street
2500 One Liberty Place
Philadelphia, PA 19103
Telephone: (215) 851-8100
Facsimile: (215) 851-1420
*Attorneys for GMAC Mortgage, LLC*