**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 11-62424-Civ-SCOLA

| | |
|---|---|
| Christina Ulbrich, as an individual and as a representative of the classes, | ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| GMAC Mortgage, LLC, formerly known as GMAC Mortgage Corporation, and Balboa Insurance Services, Inc., | ) ) ) |
| | ) |
| Defendants. | ) |

**MOTION OF DEFENDANT GMAC MORTGAGE, LLC
TO COMPEL ARBITRATION AND FOR A STAY OR, IN THE ALTERNATIVE,
TO DISMISS THE COMPLAINT AND OTHERWISE STRIKE THE JURY DEMAND**

Defendant GMAC Mortgage, LLC, formerly known as GMAC Mortgage Corporation ("GMAC"), moves the Court for an Order compelling arbitration between GMAC and Plaintiff Christina Ulbrich ("Ulbrich") and staying the litigation pursuant to the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1-16. In the alternative, GMAC moves the Court for an Order dismissing the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and otherwise striking the jury demand pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.

## I.    INTRODUCTION

This putative class action filed by Ulbrich against GMAC involves a mortgage borrower's duty to maintain continuous insurance coverage and a lender's right to purchase such coverage should the borrower fail to do so. Ulbrich attempts to assert the following claims against GMAC: (1) Breach of Contract/Breach of Good Faith and Fair Dealing (Count I);

(2) Unjust Enrichment (Count II); (3) Breach of Fiduciary Duty (Count III); and (4) Violation of Florida Deceptive and Unfair Trade Practices Act (Count IV).

The Court should compel arbitration of Ulbrich's claims against GMAC because they arise out of lender-purchased wind insurance and because the parties made an agreement to arbitrate "any claim, dispute or controversy" between them, "including but not limited to" claims arising out of "insurance products and services."  Further, the Court should stay this action while the arbitration is pending.

Alternatively, the Court should dismiss the Complaint for failure to state a claim.  As a threshold matter, GMAC was acting within its express contractual rights when it required continuous insurance coverage on the mortgaged property and purchased such coverage on Ulbrich's behalf when she did not provide proof of coverage.  Against this backdrop, there can be no claim that GMAC breached its contract with Ulbrich or any duty of good faith and fair dealing.  Given that GMAC's acts were authorized by the parties' contract, it follows that Ulbrich's remaining claims – including her claim under the Florida Deceptive and Unfair Trade Act – fail.  Further, there can be no unjust enrichment claim because there was an express contract governing the parties' relationship.  And, there is no breach of fiduciary duty claim because GMAC, as her lender, did not owe Ulbrich a fiduciary duty and, in any event, such a claim is barred by the economic loss rule.  Thus, the Complaint should be dismissed.

Finally, Ulbrich expressly waived any right to a jury trial in her mortgage documents and, given that federal courts in Florida have repeatedly upheld the identical waiver in other cases, the Court should at a minimum strike the jury demand in the Complaint.

## II.   FACTS

On August 4, 2003, Ulbrich entered into a thirty year "cash-out" mortgage refinance loan (the "Loan") with GMAC in the amount of $201,000.  Compl., ¶ 19.  In order to secure

repayment of the Loan, Ulbrich executed a uniform mortgage document created and approved by Fannie Mae/Freddie Mac for single family homes in Florida (Form 3010) (the "Mortgage") encumbering her home at 2825 NE 23rd Street, Fort Lauderdale, Florida (the "Property"). *Id.* at ¶ 19. The Mortgage is attached to the Complaint as Exhibit 2.

Among other things, the Mortgage requires that borrowers keep their homes insured "against loss by fire, hazards included within the term 'extended coverage,' and any other hazard including, but not limited to, earthquakes and floods, for which Lender requires insurance." *See* Compl., ¶ 20; Mortgage, p. 6, § 5. "This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires." Mortgage, p. 6, § 5. The Mortgage also provides that "[w]hat Lender requires pursuant to the preceding sentences can change during the term of the loan." *Id.* at p. 7, § 5.

The Mortgage specifically permits lenders to obtain coverage to protect their rights in mortgaged properties when borrowers fail to maintain such coverage, but the Mortgage does not obligate lenders "to purchase any particular type or amount of coverage." *See* Compl., ¶ 20; Mortgage, p. 7, § 5. Moreover, in executing the Mortgage, the "Borrower acknowledges that the cost of insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained." *Id.*, p. 6, § 5.

At the same time she entered into the Loan, Ulbrich also received a home equity line of credit from GMAC in the amount of $100,000 (the "HELOC"). The HELOC was evidenced by a Home Equity Line of Credit Agreement and Disclosure Statement (the "HELOC Agreement") along with a mortgage securing future advances under the HELOC (the "HELOC Mortgage").[1]

---

[1]     Copies of the HELOC Agreement and HELOC Mortgage are attached as Exhibits A and B, respectively, to the Declaration of Davida Harriott, **Exhibit 1** hereto ("Harriott Dec.").

The HELOC Agreement contained a broad arbitration provision, which provided that "any" claim between Ulbrich and GMAC would be resolved by binding arbitration; such disputes were not limited to those arising under the HELOC Agreement but, rather, encompassed the universe of the Parties' potential claims against each other.[2]  *See* HELOC Agreement, p. 6, ¶ 15.  Indeed, the arbitration agreement stressed that "[t]he term Claim shall be given the broadest possible meaning."  *Id.*  The arbitration clause also gives a series of "including but not limited to" examples of disputes subject to arbitration which specifically identified "insurance products or services."  *Id.*  Finally, the HELOC Agreement also contained a class action waiver provision whereby Ulbrich waived any right to participate as a class representative or class member pertaining to "any" dispute between her and GMAC.  *Id.*

According to the Complaint, in the beginning of 2011, GMAC sent notices to Ulbrich informing her that its records showed a lapse of hazard, flood and/or wind insurance coverage for

---

[2]    The arbitration provision reads in part:

THIS AGREEMENT PROVIDES THAT EXCEPT AS DETAILED IN PARAGRAPH 15(b), ALL CLAIMS (AS DEFINED BELOW) WILL BE RESOLVED BY BINDING ARBITRATION.  BY SIGNING THIS AGREEMENT, THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT TO LITIGATE THE CLAIM IN COURT, PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OR CLAIMANTS PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION OR HAVE A JURY TRIAL FOR CLAIMS THAT ARE SUBJECT TO ARBITRATION.

(a)    **AGREEMENT TO ARBITRATE CLAIMS**.    Any claim, dispute or controversy (collectively "Claim") between GMAC and us (except those listed below in Paragraph 15(b)) including but not limited to those arising out of the Credit Documents, any application, advertisements, servicing and collection of the Account, any outstanding balances or balance transfers posted to the Account, insurance products or services, as well as any other disclosure or document related to the Credit Documents shall exclusively be resolved by **BINDING ARBITRATION** by an arbitrator of the American Arbitration Association ("AAA") in accordance with (i) the Federal Arbitration Act; (ii) the Expedited Procedures of the Commercial Rules of the AAA and the AAA Supplementary Procedures for Consumer Related Disputes and (iii) this Paragraph.  The term Claim shall be given the broadest possible meaning.

*See* HELOC Agreement, p. 6, ¶ 15 (emphasis in original).

the Property.  *See* Compl., ¶¶ 22-23, 27-29, 31-32, 39-40, Exhs. 1-5, 7-11, 13-14.   The

Complaint alleges that GMAC thereafter purchased wind and flood insurance on Ulbrich's

behalf, but that it ultimately cancelled all but one of those polices and credited Ulbrich's escrow

account accordingly.  *See id.*  *See also* Compl., ¶ 45.  Ultimately, Ulbrich alleges that GMAC

purchased a wind policy on April 27, 2011, providing coverage from October 1, 2010 to October

1, 2011, and that GMAC should have cancelled and refunded that policy as well.  *See* Compl., ¶

45.  Ulbrich concedes that she never paid for the policy, but nonetheless claims that the

Mortgage did not authorize the purchase of wind insurance or insurance covering a period of

time pre-dating the date of purchase and, further, that GMAC profited from the sale of lender-

placed insurance, which was not permitted by the Mortgage.  *Id.*, ¶¶ 37, n.7, 75 and 76.

Based on these allegations, Ulbrich attempts to assert the following claims against

GMAC on a class-wide basis: (1) Breach of Contract/Breach of Good Faith and Fair Dealing

(Count I); (2) Unjust Enrichment (Count II); (3) Breach of Fiduciary Duty (Count III); and

(4) Violation of Florida Deceptive and Unfair Trade Practices Act (Count IV).[3]

### III.   ARGUMENT

**A.    Ulbrich's Claims Against GMAC Are Subject To Her Agreement To Arbitrate "Any Claim, Dispute Or Controversy" Between Her And GMAC**

Ulbrich has agreed to arbitrate "any claim, dispute or controversy" she has with GMAC.

*See* HELOC Agreement, ¶ 15.  Further, Ulbrich has agreed to do so on an individual – and not on

a class – basis.  *Id.*  That the Complaint involves a "claim, dispute or controversy" "between

GMAC and [Ulbrich]" in and of itself renders the claims therein subject to arbitration.  Indeed,

Ulbrich agreed that "[t]he term Claim shall be given the broadest possible meaning."  *Id.*  Lest

---

[3]     Ulbrich also asserts a claim for Unjust Enrichment (Count V) against Co-Defendant
Balboa Insurance Services, Inc. ("Balboa").

there be any doubt, however, the arbitration clause provides a series of "including but not limited to" examples of disputes subject to arbitration and specifically identifies disputes arising out of "insurance products or services." *Id.* Against this backdrop, the Court should compel arbitration of the insurance dispute between GMAC and Ulbrich and stay the litigation as required by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16.

The FAA represents "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, (1983), and implements "the strong federal policy in favor of enforcing arbitration agreements." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985). In short, the "principal purpose" of the FAA is to "ensur[e] that private arbitration agreements are enforced according to their terms." *Volt Info. Scis. v. Bd. of Trs., Leland Stanford Jr. Univ.*, 489 U.S. 468, 478 (1989).

This purpose is readily apparent from the FAA's text. Section 2 makes arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract;" Section 3 requires courts to stay litigation of arbitral claims pending arbitration of those claims "in accordance with the terms of the agreement;" and Section 4 requires courts to compel arbitration "in accordance with the terms of the agreement" upon the motion of either party to the agreement. Thus, in reviewing a motion to compel arbitration, a court first considers whether an agreement to arbitrate exists and, if so, whether an arbitrable issue exists. 9 U.S.C. §§ 2, 4. Applying this analysis to the case before this Court results in the conclusion that GMAC and Ulbrich agreed to arbitrate the dispute that is the subject of the Complaint.

Here, Ulbrich and GMAC entered into an agreement to arbitrate when Ulbrich signed the HELOC Agreement on August 3, 2003, the same date she closed on the Loan.  Thus, the traditional elements for the formation of a contract were present.  Further, that Ulbrich agreed to arbitrate on an individual basis and waived participation in a class action as a named representative or otherwise does not present grounds "as exist at law or in equity for the revocation of any contract."  *See AT&T Mobility LLC v. Concepcion*, ___U.S. ___, 131 S. Ct. 1740, 1748 (2011) ("The overarching purpose of the FAA, evident in the text of §§ 2, 3, and 4, is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings.  Requiring the availability of class wide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA.").  Accordingly, the making of a valid agreement to arbitrate is not an issue in this case.

Likewise, whether an arbitrable issue exists is not an issue in this case.  Courts "should resolve all doubts in favor of arbitration, rather than against it."  *Moses H. Cone*, 460 U.S. at 1.  Further, the burden is on Ulbrich to show that the dispute between her and GMAC does not fall within the scope of the arbitration provision.  *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (citations omitted).  To meet that heavy burden, Ulbrich would have to establish "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *AT&T Techs. v. Commc'ns Workers*, 475 U.S. 643, 650 (1986) (citation and internal quotation marks omitted).  This she cannot do.

Here, Ulbrich agreed in the HELOC Agreement to arbitrate "any claim, dispute or controversy" "between GMAC and [Ulbrich]" "including but not limited to those arising out of" "insurance products or services."  *See* HELOC Agreement, ¶ 15.  Ulbrich also agreed that "[t]he term Claim shall be given the broadest possible meaning."  *Id.*  GMAC and Ulbrich are now

involved in a dispute over insurance purchased by GMAC.  The broad arbitration provision in the HELOC Agreement applies to this dispute, even though GMAC purchased the insurance pursuant to the terms of the Mortgage.

Indeed, the Eleventh Circuit itself has recognized that parties to a contract can agree to arbitrate "the universe of the parties' potential claims against each other:"

> The language of the clause at issue is brief, unequivocal and all-encompassing.  ***It states that 'any dispute between them or claim by either against the other' is subject to arbitration.  By using this inclusive language, the parties agreed to arbitrate any and all claims against each other, with no exceptions.***  An arbitration agreement is not vague solely because it includes the universe of the parties' potential claims against each other.

*Brown v. ITT Cons. Fin. Corp.*, 211 F.3d 1217, 1221 (11th Cir. 2000) (emphasis added).

Thus, the courts will order arbitration where the parties have entered into a broad agreement to arbitrate in one contract and ended up in a dispute arising out of a separate contract or dealing between the parties.  *See, e.g., 24 Go Wireless, Inc. v. AT&T Mobility II, LLC*, No. 11-20930, 2011 WL 2607099, at *2 (S.D. Fla. Jun. 30, 2011) ("24 Go argues that the offer it received from AT&T to market the Apple iPhone was a contract separate from the parties' Agreement and that 24 Go's claims concerning the iPhone offer are therefore not subject to the Agreement's arbitration provision.  This argument ignores the fact that the arbitration provision expressly states that '*all claims and disputes* between [24 Go] and [AT&T] must be resolved by submission to binding arbitration.'") (emphasis in original) (Moreno, J.);  *Branchville Mach. Co., Inc. v. Agco Corp.*, 252 F. Supp. 2d 307, 311 (E.D. Va. 2003) (agreement in one contract to arbitrate disputes arising out of or relating to "any relationship or business dealings between the parties" required arbitration of dispute under a contract that did not contain an arbitration clause: "The clause in the instant agreement, then, by its own terms, reaches beyond the Financing Agreement itself to cover disputes arising from all aspects of the parties' relationship.").

In short, there is a valid agreement to arbitrate that covers the insurance dispute between GMAC and Ulbrich.  As required by the FAA, the Court should now compel arbitration on a non-class basis between GMAC and Ulbrich and stay the litigation in the interim.

**B.      Ulbrich Fails To State A Claim Upon Which Relief Can Be Granted**

In the alternative, the Court should dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rule of Civil Procedure.  Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory, or where it presents a cognizable legal theory yet fails to plead essential facts to support that theory.  *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The purpose of a Rule 12(b)(6) motion to dismiss is "to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity."  *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993).

A complaint must plead enough facts to state a claim for relief that is "plausible" (as opposed to just "conceivable").  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Thus, to survive a motion to dismiss, a complaint must contain more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s] devoid of further factual enhancement;" rather, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level."  *Id.* at 555.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 557).

As set forth below, Ulbrich fails to state a claim against GMAC upon which relief can be granted and, accordingly, the Court should dismiss the Complaint.

1.      **The Contract Expressly Authorized GMAC's Acts And The Duty Of Good Faith Cannot Be Used To Rewrite The Contract**

In Count I of her Complaint, Ulbrich alleges that GMAC breached its contract when it required that she maintain continuous insurance coverage, purchased such coverage on her behalf when she failed to do so, and allegedly profited from the sale of such coverage.  A plaintiff, however, must plead and prove three elements to make out a breach of contract claim: "(1) a valid contract; (2) a material breach; and (3) damages."  *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999) (Florida law).  Ulbrich, however, fails to allege a breach of contract.

Because GMAC was acting within its express contractual rights as set forth in Section 5 of the Mortgage, GMAC did not breach the Mortgage and Ulbrich cannot assert a breach of contract claim against GMAC.  *See Gibson v. Chase Home Fin., LLC*, No. 11-1302, 2011 WL 6319401, at *3 (M.D. Fla. Dec. 16, 2011) (dismissing breach of contract claim because "[t]he mortgage require[d] [the plaintiff] to maintain flood insurance in the amount that [the defendant] in its sole discretion require[d], the mortgage allow[ed] [the defendant] to purchase flood insurance on [the plaintiff's behalf], and the mortgage warn[ed] [the plaintiff] that force-placed flood insurance may cost more than the market rate"); *Kolbe v. BAC Home Loans Servicing, L.P.*, No. 11-10312, 2011 WL 3665394, at *3 (D. Mass. Aug. 18, 2011) (dismissing breach of contract claim because [t]he mortgage provision also gives the lender the right to change the amount of required insurance as it deems necessary."); *Lass v. Bank of America, N.A.*, No. 11-10570, 2011 WL 3567280, at *3 (D. Mass. Aug. 11, 2011) (dismissing breach of contract claim because the Fannie Mae/Freddie Mac form language "unambiguously gave defendants the discretion to determine the appropriate amount of flood insurance and to purchase that insurance on plaintiff's behalf should she fail to do so."); *Hayes v. Wells Fargo Home Mortg.*, No. 06-

1791, 2006 WL 3193743, at *4 (E.D. La. Oct. 31, 2006) (reviewing the Fannie Mae/Freddie Mac form language and rejecting the mortgagor's breach of contract claim since the language clearly permitted the lender to place insurance in the amount it determined to be adequate).

Recognizing that the Fannie Mae/Freddie Mac form mortgage unequivocally provides lenders with the right to place insurance, Ulbrich alleges that GMAC violated the Mortgage by requiring continuous coverage and allegedly receiving a commission from the sale of such coverage.  However, Ulbrich's claim is not supported by the language of the Mortgage or case law.  As a threshold matter, Ulbrich cannot point to any contractual provision that GMAC allegedly breached.  Ulbrich's inability to do so is a function of the simple fact that there is no provision that prohibits GMAC from requiring continuous insurance coverage or benefiting from the sale of such coverage as Ulbrich alleges.  Indeed, Section 5 of the Mortgage expressly allowed GMAC to take the actions that it took, *i.e.*, purchase insurance on Ulbrich's behalf where it did not have proof of continuous coverage.

Further, courts that have faced the exact same claim that Ulbrich makes here have rejected the claim.  *See Schilke v. Wachovia Mortg., FSB*, No. 09-cv-01363, 2011 WL 4501381, at *3, 8 (N.D. Ill. Sept. 28, 2011) (dismissing breach of contract claim that was based on "fees— which [the plaintiff] term[ed] 'kickbacks'" and policies that plaintiff coined as "backdated:" "In sum, Plaintiff's [breach of contract] claims fail[s] . . . because Plaintiff has not . . . demonstrated that Wachovia breached the terms of the contract.  If anything, [the mortgagee] honored the agreement when it did exactly what it told Plaintiff it would do—purchase an insurance policy at Plaintiff's expense when Plaintiff failed to maintain its obligations under the agreement by maintaining insurance on the property."); *Webb v. Chase Manhattan Mortg. Corp.*, No. 05-0548, 2008 WL 2230696, at *20 (S.D. Ohio May 28, 2008) (rejecting plaintiff's claim based on so-

called "backdated" policies and allegedly improper commissions to the lender based on such policies); *Richardson v. Ameriquest Mortg .Co.*, No. 08-22334, 2011 WL 5548066 (Fla. Cir. Ct. Nov. 8, 2011) (relying on the same mortgage language to reject breach of contract claim that alleged that the lender improperly received a share of the lender-placed insurance premium because "[e]ven if an overcharge existed, [the plaintiff] point[ed] to no provision within the mortgage preventing the lender from accepting a portion of the premium charged to [the plaintiff].").

Ulbrich cannot save her breach of contract claim by arguing that GMAC breached the implied covenant of good faith and fair dealing.  While Florida recognizes an implied duty of good faith and fair dealing in contracts, "the doctrine of implied covenant of good faith cannot be used to vary the terms of an express contract." *Flagship Resort Dev. Corp. v. Interval Int'l, Inc.*, 28 So. 3d 915, 924 (Fla. 3d DCA 2010).  *See also Senter v. JPMorgan Chase Bank, N.A.*, No. 11-60308, 2011 WL 4089585, at *18 (S.D. Fla. Aug. 9, 2011) ("a breach of the implied covenant of good faith and fair dealing is not an independent cause of action, and cannot be maintained under Florida law in the absence of a breach of an express term of a contract.").

The plain language of the Mortgage makes clear that GMAC acted in accordance with its express rights when it purchased insurance.  *See Gibson*, 2011 WL 6319401, at *5 (granting motion to dismiss breach of good faith and fair dealing claim based on lender-placed insurance: "Because [the plaintiff] fails to identify a breached contract term, the good faith and fair dealing claim, which requires a breach, is untenable."); *Estate of Gleiberman v. The Hartford Life Ins. Co.*, 94 Fed. Appx. 944, 947 (3d Cir. 2004) ("the District Court properly dismissed the claim for breach of the covenant of good faith and fair dealing, as Hartford acted in accordance with the terms of the contract at all times.") (citation omitted).  In fact, the contractual provisions that

GMAC was enforcing were form provisions provided by Fannie Mae/Freddie Mac and have been consistently upheld.  *Kolbe*, 2011 WL 3665394 at *5 (dismissing breach of good faith and fair dealing claim where the defendant exercised its rights under the Fannie Mae/Freddie Mac form language); *Lass*, 2011 WL 3567280 at *5 (same); *Morgan v. Litton Loan Servicing LP*, No. 10-1865, 2010 WL 3464691, at *2 (D. Md. Sept. 8, 2010) (same); *Hayes*, 2006 WL 3193743 at *4 (upholding the Fannie Mae/Freddie Mac form language).

Moreover, GMAC had every reason to exercise its right under the Mortgage to require continuous coverage.  For instance, GMAC, as the lender, cannot know with complete certainty whether or not a loss might have been suffered during a lapse of insurance.  *See Shilke*, 2011 WL 4501381 at *3, 8 ("Wachovia's contractual right was to have continuous coverage on the property.  Wachovia was not under any obligation to determine whether the property had suffered any damage from the date that Plaintiff had allowed her coverage to lapse"); *Webb*, 2008 WL 2230696 at *2 ("Chase had to ensure that the property was continuously covered in the event that a loss had occurred during the lapse in insurance coverage because no inspection of the property was done.  If Chase had obtained replacement insurance effective as of the date it received confirmation that the property was no longer insured, and a loss had occurred in the interim, then there would be no coverage to satisfy Chase's security interest or the borrower's ownership interest in the property.").

Similarly, failing to ensure continuous coverage might actually expose GMAC to potential lawsuits.  *See*, *e.g.*, *Trinity Evangelical Lutheran Church & Sch.-Friestadt v. Tower Ins. Co.*, 661 N.W.2d 789 (Wisc. 2003) (involving multi-million dollar punitive damages award for insured on bad faith claim where insurer initially refused to backdate coverage that had been omitted from policy due to mutual mistake of insured and insurance agent); *Anderson v. Minn.*

*Mut. Fire & Cas. Co.*, 399 N.W.2d 233, 234 (Minn. Ct. App. 1987) (backdating of coverage by insurance agent was proper); *Folk v. Home Mut. Ins. Co.*, 368 N.W.2d 305, 308 (Minn. Ct. App. 1985) (finding duty to backdate insurance).  Thus, not only does GMAC have the contractual right to act as it did, it had every reason to exercise that right.

Accordingly, Ulbrich's Breach of Contract/Breach of Good Faith and Fair Dealing claim should be dismissed.

### 2.      There Is No Unjust Enrichment Claim Because There Was An Express Contract And GMAC's Acts Were Authorized

Ulbrich attempts to assert a claim for unjust enrichment in Count II of her Complaint.

As a preliminary matter, "[c]ourts have held that under Florida law, a claim for unjust enrichment, a form of equitable relief, cannot stand if an express contract exists." *Degirmenci v. Sapphire-Ft. Lauderdale, LLP*, 693 F. Supp. 2d 1325, 1347 (S.D. Fla. 2010).  *See also Restrepo v. Wells Fargo Bank, N.A.*, No. 09-22436, 2010 WL 374771, at *3 (S.D. Fla. Feb. 3, 2010) ("Plaintiff has alleged an express contract and has attached the contract to the complaint. Consequently, the unjust enrichment claim must be dismissed with prejudice."); *Taylor, Bean & Whitaker Mortg. Corp. v. GMAC Mortg. Corp.*, No. 5:05-cv-260-Oc, 2006 WL 4990903, at *7 (M.D. Fla. Jun. 15, 2006) ("Plaintiff has not suggested nor alleged that the Agreement is invalid or unenforceable. Instead, Plaintiff, is seeking to recover the same monies through both its breach of contract and unjust enrichment claims.  Therefore, because there is an available remedy at law, the equitable remedy of unjust enrichment-as presently pled-fails because the 'law will not imply a contract where a valid express contract exists.'") (quoted case omitted); *Reese v. JPMorgan Chase & Co.*, 686 F. Supp. 2d 1291, 1309 (S.D. Fla. Oct. 15, 2009) ("where there is an express contract between the parties, claims arising out of that contractual relationship

will not support a claim for unjust enrichment").  For this reason alone, the unjust enrichment claim in Count II fails as a matter of law.

Further, an "enrichment" is "unjust" only if "it would be inequitable for [a defendant] to retain [a] benefit without paying for it." *Nova Info. Sys., Inc. v. Greenwich Ins. Co.*, 365 F.3d 996, 1006–07 (11th Cir. 2004).  Here, there was no injustice as GMAC did not breach its contract and, indeed, acted as that contract authorized it to act.  *See Gibson*, 2011 WL 6319401, at *5 (dismissing unjust enrichment claim based on lender-placed insurance because the lender demanded and received only that for which it contracted).  The fact that GMAC allegedly profited from its insurance purchase is insufficient to support a claim that there was any injustice. *See Schilke*, 2011 WL 4501381, at *7 (dismissing unjust enrichment claim based on commissions allegedly paid in connection with lender-placed insurance); *Lass*, 2011 WL 3567280, at *7 (dismissing unjust enrichment claim based on commissions allegedly paid in connection with lender-placed insurance: "By failing to purchase the insurance on her own, plaintiff impliedly accepted the forced-placement of insurance, including any fee associated therewith.").  For this additional reason, the Court should dismiss the unjust enrichment claim in Count II.

### 3.   GMAC Did Not Owe Ulbrich A Fiduciary Duty, And Even If It Did, Florida's Economic Loss Rule Precludes Ulbrich's Claim

The Court should dismiss Ulbrich's fiduciary duty claim as asserted in Count III of the Complaint.  The general rule is that the relationship between a bank and its borrower is that of a creditor-debtor and that a bank owes the borrower no fiduciary duty.  *See McCulloch v. PNC Bank Inc.,* 298 F.3d 1217, 1226 n. 13 (11th Cir. 2002) ("there is no presumed fiduciary relationship between a lender and a borrower") (applying Florida law); *Azar v. Nat'l City Bank*, No. 09-400, 2009 WL 3668460, at *2 (M.D. Fla. Oct. 26, 2009) (dismissing breach of fiduciary

duty claim despite longstanding relationship between lender and borrower).   Nothing in the Complaint takes the instant case out of the general rule.

In fact, courts have routinely rejected the argument made by Ulbrich here – that a mortgage escrow account establishes a fiduciary duty on the part of a lender.  *See*, *e.g.*, *McLean v. GMAC Mortg. Corp.*, No. 06-22795, 2008 WL 1956285, at *17-18 (S.D. Fla. May 2, 2008) (rejecting plaintiff's breach of fiduciary duty claim stemming from alleged problems related to administration of escrow account: "The plaintiffs have not shown that GMAC owed a fiduciary duty to the plaintiffs in administering the escrow account or otherwise servicing the mortgage. Since there is no fiduciary relationship between the plaintiff and GMAC, GMAC is entitled to final summary judgment as to the plaintiffs' claim for breach of fiduciary duty . . . ."); *Sussman v. Weintraub*, No. 06-20408, 2007 WL 908280, at *4 (S.D. Fla. Mar. 22, 2007) (rejecting defendant's counterclaim for breach of fiduciary duty arising from administration of escrow account: "there [were] no allegations by [the mortgagors] that they either reposed confidence in the [mortgagee], nor that [the mortgagee] accepted any such duties").

Here, GMAC was simply Ulbrich's lender and owed her no fiduciary duty.  Significantly, there is nothing in the Complaint that would elevate their relationship to a fiduciary level, including the allegation that GMAC administered Ulbrich's escrow account.  The Court should dismiss Ulbrich's claim for this reason alone.

Further, a lender does not breach the duty when it allegedly charges a commission from a mortgagor's escrow account for force-placing insurance.  As one court explained:

> [The mortgagor's] mortgage does not specifically address whether [the servicer] may charge a fee or commission for the purchase of force-placed insurance or whether such a fee can be paid out of [the mortgagor's] escrow account.  That level of specificity was not necessary, however, because [the mortgagor's] escrow account was established for the express purpose of paying insurance

> premiums.   Thus, it can be inferred that any fees or charges
> associated with the payment of those premiums could also be
> withdrawn from the escrow account.  As such, the Court finds that
> plaintiff has failed to state a viable claim for breach of fiduciary
> duty . . . .

*Lass*, 2011 WL 3567280, at *8 (dismissing claim for breach of fiduciary duty stemming from use

of escrow funds to pay for force-placed insurance).  *See also Telfair v. First Union Mortg. Corp.*,

216 F.3d 1333, (11th Cir. 2000) (rejecting breach of fiduciary claim arising from the defendant's

use of escrow funds to pay itself a commission for lender-placing insurance because no fiduciary

duty is established "[i]n the case of escrow funds held by a mortgagee for payment of tax and

insurance payments on behalf of a mortgagor pursuant to a security agreement").

In short, GMAC did not owe or violate a fiduciary duty and Count III should be

dismissed.  However, even if GMAC somehow owed Ulbrich a fiduciary duty, her claim is

otherwise barred by Florida's economic loss rule.

The economic loss rule is "designed to prevent parties to a contract from circumventing

the allocation of losses set forth in the contract by bringing an action for economic loss in tort."

*Indemn. Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 536 (Fla. 2004).

Accordingly, courts routinely dismiss fiduciary duty claims – such as the one asserted

here – where the claim seeks to recover economic damages that flow from a breach of contract

claim.  *See, e.g.*, *Royal Surplus Ins. Co. v. Coachman Indus., Inc.*, 184 Fed. Appx. 894, 901 (11th

Cir. 2006) (affirming dismissal of breach of fiduciary duty claim because they were based on the

same information that formed the basis for a breach of contract claim); *Gardner v. Construct

Corps. LLC*, No. 09-1743, 2010 WL 427742, at *2 (M.D. Fla. Feb. 1, 2010) (dismissing breach

of fiduciary duty claim because "the breach of duty in this action is premised upon an

employment agreement signed by each plaintiff"); *Cohen v. Nat'l City Mortg. Co.*, No. 08-578,

2009 WL 2436595, at *3 (M.D. Fla. Aug. 6, 2009) (dismissing breach of fiduciary duty claim);

*Action Nissan, Inc. v. Hyundai Motor Am.*, 617 F. Supp. 2d 1177, 1192-94 (M.D. Fla. 2008) (dismissing breach of fiduciary duty claim because the fiduciary duty alleged was "established entirely by the contract"); *Granat v. AXA Equitable Life Ins. Co.*, No. 06-21197, 2006 WL 3826785, at *5 (S.D. Fla. Dec. 27, 2006) (dismissing breach of fiduciary claim as "inextricably intertwined and dependent upon the breach of contract claim" because the injuries alleged and damages claimed under the two counts were the same).

Here, Ulbrich's Complaint makes clear that the duty she tries to style as a "fiduciary duty" is established solely by Paragraph 3 of the Mortgage. *See* Compl., ¶ 93-96. Because the duty which forms the basis of Ulbrich's breach of fiduciary duty claim is established by contract between her and GMAC (or, at the *very* least, is "inextricably intertwined" with it), the economic loss rule bars her claim. Accordingly, Count III should be dismissed for this additional reason.

### 4.     There Was No Plausible "Deceptive Act" Under The FDUPTA Given That GMAC's Acts Were Expressly Permitted By The Mortgage

The Court should also dismiss the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), F.S.A. §§ 501.201-213, set forth in Count IV of the Complaint. The FDUTPA makes it "unlawful" to engage in "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" *Id.* § 201.204(1).

However, dismissal of a FDUTPA claim is appropriate where the contractual agreement between the parties provides for the actions about which the plaintiff complains. *Ebeh v. St. Paul Travelers*, No. 09-2628, 2010 WL 5553687, at *6 (M.D. Fla. Oct. 6, 2010), *adopted* 2011 WL 53028 (M.D. Fla. Jan. 7, 2011) (dismissing FDUTPA claim because lender-placed replacement-value coverage was permitted "under the mortgage," even if replacement-value coverage was not required by federal law); *Gibson*, 2011 WL 6319401 at *6 (dismissing

FDUTPA claim stemming from lender-placed insurance); *McLean*, 2008 WL 1956285 at *14 (Entering judgment in favor of GMAC as to plaintiff's FDUTPA claim stemming from alleged problems related to administration of escrow account).

Here, GMAC's acts were not deceptive and, as noted above, were indeed expressly permitted by the Mortgage.  In particular, Section 5 of the Mortgage gave GMAC the right to protect its security interest by requiring continuous insurance coverage and to purchase such coverage on behalf on Ulbrich if she failed to do so.  As reflected in the case law cited above, this right has consistently been recognized and upheld.  Accordingly, Ulbrich does not plead a plausible claim under FDUTPA.

      **C.**      **The Court Should At A Minimum Strike The Jury Demand**

This Court should otherwise strike Ulbrich's demand for a jury trial because Ulbrich expressly and specifically waived any right to a jury trial.  *See* Mortgage, ¶ 25 ("**25.  Jury Trial Waiver.**  The Borrower hereby waives any right to a jury trial in any action, proceeding, claim, or counterclaim, whether in contract or in tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.").  Paragraph 25 is the last paragraph of the Mortgage.  All that is between it and Ulbrich's notarized signature is her acknowledgement that she "accepts and agrees to the terms and covenants contained in this Security Agreement[.]"  *Id.*

This very waiver has been upheld by numerous Florida federal district courts.  *See, e.g.*, *Collins v. Countrywide Home Loans, Inc.*, 680 F. Supp. 2d 1287, 1295 (M.D. Fla. 2010) (Moody, J.); *Sekesan v. Aegis Funding Corp.*, No. 09–62026, 2010 WL 1249443, at *1 (S.D. Fla. Mar. 25, 2010) (Huck, J.); *Oglesbee v. IndyMac Fin. Servs., Inc.*, 675 F. Supp. 2d 1155, 1158 (S.D. Fla. 2009) (King, J.); *Anderson v. Apex Fin. Group, Inc.*, Case No. 08-949, 2008 U.S. Dist. LEXIS 111449, at *5 (S.D. Fla. July 16, 2008) (Moody, J.); *Murphy v. Cimarron Mortg. Co.*, No. 06-2142, 2007 WL 294229, at *2 (M.D. Fla. Jan. 29, 2007) (Bucklew, J.); *Belin v. Litton Loan*

*Servicing*, No. 06-760, 2006 WL 2061340, at *1 (M.D. Fla. July 17, 2006) (Bucklew, J.); *Gulati v. Countrywide Home Loans, Inc.*, No. 6:05-CV-1097, 2006 WL 6300891, at *1-2 (M.D. Fla. Feb. 17, 2006) (Baker, M.J.).  This Court should adopt the same approach and strike Ulbrich's jury demand pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.

## IV.    CONCLUSION

GMAC requests that this Court enter an Order directing GMAC and Ulbrich to proceed to arbitrate the disputes between them on a non-class basis and staying this action in the interim. In the alternative, the Court should enter an Order dismissing the Complaint and, to the extent not otherwise moot, striking the jury demand.

Respectfully submitted,

/s/ Jennifer Cohen Glasser
Jennifer Cohen Glasser
**AKERMAN SENTERFITT**
One Southeast Third Avenue, 25th Floor
Miami, FL 33131
Telephone No. (305) 374-5600
Facsimile No.  (305) 374-5095
E-Mail Address: jennifer.glasser@akerman.com

Henry F. Reichner (admitted *Pro Hac Vice*)
Joe N. Nguyen (admitted *Pro Hac Vice*)
**REED SMITH LLP**
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103-7301
Telephone No. (215) 851-8100
Facsimile No.  (215) 851-1420
E-Mail Address: hreichner@reedsmith.com
E-Mail Address: jnguyen@reedsmith.com

*Attorneys for Defendant*
*GMAC Mortgage, LLC, formerly known as*
*GMAC Mortgage Corporation*

Dated: January 13, 2012

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion Of Defendant GMAC Mortgage, LLC To Compel Arbitration And For A Stay Or, In The Alternative, To Dismiss The Complaint And Otherwise Strike The Jury Demand has been filed electronically this 13th day of January, 2012, and the following counsel of record will be notified by the Court's ECF system.

E. Michelle Drake
drake@nka.com
Kai Richter
krichter@nka.com
Timothy C. Selander
selander@nka.com
Nichols Kaster, PLLP
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 338-4878
*Attorneys for Christina Ulbrich*

Erika Deutsch Rotbart
edrotbart@dralawfirm.com
Deutsch Rotbart & Associates PA
4755 Technology Way
Suite 106
Boca Raton, FL 33431
Telephone: (561) 361-8010
Facsimile: (561) 361-8086
*Attorneys for Christina Ulbrich*

/s/ Jennifer Cohen Glasser
Jennifer Cohen Glasser

{22965286;1}