**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No.: 0:11-cv-62424-SCOLA

| | |
|---|---|
| Christina Ulbrich, as an individual and as a representative of the classes, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| GMAC Mortgage, LLC, formerly known as GMAC Mortgage Corporation, and Balboa Insurance Services, Inc., | ) ) ) ) ) |
| Defendants. | ) ) ) |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS FILED BY DEFENDANT BALBOA INSURANCE SERVICES, INC. (ECF NO. 25)**
(*ORAL ARGUMENT REQUESTED*)

**NICHOLS KASTER, PLLP**
Timothy C. Selander, FL Bar No. 0036468
Kai Richter, MN Bar No. 0296545*
E. Michelle Drake, MN Bar No. 0387366*
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 215-6870
*admitted pro hac vice*

**DEUTSCH ROTBART & ASSOCIATES, P.A.**
Erika Deutsch Rotbart, FL Bar No. 0047686
4755 Technology Way, Suite 106
Boca Raton, FL 33431
Telephone: (561) 361-8010
Fax: (561) 361-8086

ATTORNEYS FOR PLAINTIFF
CHRISTINA ULBRICH

February 20, 2012

# TABLE OF CONTENTS

**TABLE OF CONTENTS** .................................................................................................................. ii

**TABLE OF AUTHORITIES** ......................................................................................................... iii

**INTRODUCTION**............................................................................................................................1

**BACKGROUND** ..............................................................................................................................1

    I.     The Backdated Windstorm Policies Were Purchased Through Balboa..............................2

    II.    Balboa Actively Conspired With GMAC to Enrich Itself at the Expense of Plaintiff and Other Borrowers................................................................................................................2

    III.   Plaintiff's Unjust Enrichment Claim Against Balboa..........................................................4

**ARGUMENT**....................................................................................................................................4

    I.     Standard of Review..............................................................................................................4

    II.    Plaintiff Has Stated a Valid Unjust Enrichment Claim Against Balboa...............................5

        A.  Plaintiff Conferred a Benefit on Balboa..........................................................................5

        B.  Balboa's Retention of the Benefit Would be Unjust......................................................7

            1.  It Was Unjust for Balboa to Accept Any Premiums for Expired Insurance ....7

            2.  It Was Unjust for Balboa to Obtain Inflated Premiums as Part of Its Kickback Scheme with GMAC ........................................................................8

            3.  Balboa's Blame the Victim Defense Fails .......................................................9

**CONCLUSION** ...............................................................................................................................10

# TABLE OF AUTHORITIES

**CASES**

*Abels v. JPMorgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273 (S.D. Fla. 2009) ......................5, 7, 9

*Alcoa Steamship Co., Inc. v. Perez*, 424 F.2d 433 (1st Cir. 1970) ...............................................10

*Am. Bankers' Ins. Co. of Florida v. Wells*, 819 So.2d 1196 (Miss. 2001) ......................................8

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ......................................................................................4

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................4

*Hofstetter v. Chase Home Finance LLC*, 2011 WL 1225900 (N.D. Cal. Mar. 31, 2011) ..............9

*Lass v. Bank of America, N.A.*, 2011 WL 3567280 (D. Mass. 2011) ...........................................10

*Pielage v. McConnell,* 516 F.3d 1282 (11th Cir.2008) ...................................................................4

*Sallah ex rel. MRT LLC v. Worldwide Clearing LLC*, 2011 WL 5914034 (S.D. Fla.) ..................4

*Stevens v. Citigroup, Inc.*, 2000 WL 1848593 (E.D. Pa. Dec. 15, 2000) .......................................9

*Vician v. Wells Fargo Home Mortg.*, 2006 WL 694740 (N.D. Ind. Mar. 16, 2006) ......................9

*Williams v. Wells Fargo Bank, N.A.*, 2011 WL 4368980 (S.D.Fla. Sept. 19, 2011) ............ *passim*

*Williams v. Wells Fargo Bank, N.A.,* 2011 WL 4901346 (S.D. Fla. Oct. 14, 2011) ......................9

*Wynkoop v. Wells Fargo Home Mortg., Inc.*, 2011 WL 2078005 (S.D. Fla. May 26, 2011) .........5

**REGULATIONS AND RULES**

Fed. R. Civ. P. 8(a)(2)....................................................................................................................4
Fed. R. Civ. P. 8(b) ........................................................................................................................4

**OTHER SECONDARY SOURCES**

http://www.ca1.uscourts.gov/files/audio/audiorss.php ................................................................10

## INTRODUCTION

In support of its Motion to Dismiss, Defendant Balboa Insurance Services, Inc. ("Balboa") objects that this lawsuit seeks to "demonize" lender-placed insurance. *Balboa Memo at 1*. However, the problem is not lender-placed insurance *per se*, and Plaintiff does not attack mortgage lenders' right to force-place insurance in a "legitimate" manner. *See id.* What Plaintiff does attack – and what deserves to be condemned – is the manipulation of the force-placed insurance process by Balboa and GMAC Mortgage, LLC ("GMAC").

Although Balboa argues that "[t]he Complaint fails to allege specific wrongdoing by the named Defendants" (*Balboa Memo at 2*), this only serves to underscore how distorted its view of the force-placed insurance process really is. It was not "legitimate" for Balboa to issue a force-placed insurance policy that was completely expired on the date it was issued. *See Complaint, ¶ 29 & Ex. 9.* It was not legitimate for Balboa to issue a second (partially-expired) policy on the ground that the first policy was no good. *See id., ¶¶ 31-32 & Exs. 10-11.* And it was not "legitimate" for Balboa to enter into a kickback arrangement with GMAC whereby GMAC would receive so-called commissions from Balboa in return for purchasing outrageously-priced force-placed insurance coverage at borrowers' expense. *Id., ¶ 56, 114.*

By engaging in this conduct and the other conduct described in the Complaint, Balboa knowingly (and still unapologetically) participated in a joint scheme with GMAC to abuse the force-placed insurance process and take advantage of Plaintiff and other borrowers for illegitimate financial gain. As a result of this scheme, Plaintiff has suffered much more than "inconvenience or annoyance." *See Balboa Memo at 2*. She has suffered direct and substantial financial harm, and has been pushed to the brink of losing her home. Accordingly, Plaintiff properly asserts an unjust enrichment claim against Balboa, and Balboa's Motion to Dismiss the Complaint should be denied.

## BACKGROUND

Plaintiff incorporates by reference the Factual Background of her Memorandum of Law in Opposition to the Motion to Dismiss Filed by Defendant GMAC Mortgage, LLC ("GMAC"). In addition, Plaintiff also sets forth the following facts specifically relating to Balboa and its separate motion to dismiss.

### I. The Backdated Windstorm Policies Were Purchased Through Balboa.

Balboa is an insurance company headquartered in California. *Compl., ¶ 16*. Many of GMAC's force-placed insurance policies are purchased through Balboa. *Id.*

The windstorm policies that GMAC force-placed on Plaintiff's property are examples of two such policies that were purchased by GMAC through Balboa. *Id., ¶¶ 29, 32 & Exs. 9, 11*. The first windstorm policy, which purported to provide "coverage" for the period from October 1, 2009 – October 1, 2010, was totally expired on the date it was issued (March 23, 2011). *Id., ¶ 29 & Ex. 9*. The second windstorm policy, which purported to provide "coverage" for the period from October 1, 2010 – October 1, 2011), was mostly expired on the date it was issued (April 27, 2011). *Id., ¶ 32 & Ex. 11*.

These two force-placed policies cost almost $10,000 apiece, and were charged to Plaintiff's mortgage escrow account on March 22, 2011 and April 26, 2011, respectively. *Id., ¶¶ 29, 32, 34*. The following month, in May 2011, Plaintiff increased her mortgage payment from $1,227.52 to $1,957.45 (at GMAC's request), in order begin making up the resulting deficit in her escrow account. *Id., ¶ 35 n.7*. Although the first windstorm policy was eventually cancelled after much obfuscation by GMAC (*id., ¶¶ 43-45*), Plaintiff **never** received a refund of the additional $730 payment that she made.[1] Moreover, the second force-placed windstorm policy was never cancelled, either in whole or in part for the backdated period. *Id., ¶ 45*. To the contrary, GMAC began threatening to foreclose on Plaintiff's Property, even though (1) Plaintiff was current on her mortgage payments prior to the time that the charges for these backdated policies posted to her account, and (2) Plaintiff attempted to make her mortgage payments thereafter (which were rejected by GMAC on the basis that the tendered payments did include additional amounts for the force-placed policies). *Id., ¶¶ 35, 46*.

### II. Balboa Actively Conspired With GMAC to Enrich Itself at the Expense of Plaintiff and Other Borrowers.

These policies were not force-placed for legitimate business reasons. Rather, Balboa and GMAC have jointly entered into a conspiracy to enrich themselves at the expense of Plaintiff and other borrowers by backdating force-placed insurance coverage, charging borrowers inflated premiums for such coverage, and skimming the excess for themselves. *Id., ¶ 59*.

---

[1] It is impossible for Plaintiff to ascertain whether the balance of the charges for the first force-placed policy have been refunded to her escrow account because GMAC has not sent Plaintiff any updated mortgage statements or escrow statements. *Id., ¶ 45*.

Balboa has actively facilitated and participated in this scheme in multiple ways. *Id., ¶¶ 54, 109.* First, Balboa accepted handsome premium payments for backdated insurance policies that were force-placed by GMAC, including but not limited to the windstorm policies that were purchased for Plaintiff's property. *Id., ¶ 55.* Even though these backdated policies provided no appreciable benefit for so-called "coverage" periods that were already expired (*id., ¶¶ 7, 114*), Balboa charged premiums that were several times greater than what ordinary insurance coverage would cost.[2] Balboa cannot retain these inflated payments for expired insurance coverage in good conscience. *Id., ¶ 115.*

Second, Balboa secured these handsome premium payments through improper means by offering GMAC kickbacks or so-called "commissions" in connection with force-placed insurance coverage. *Id., ¶ 114.* The windstorm policies that were force-placed on Plaintiff's property were no exception. In connection with both of these force-placed policies, GMAC and/or its affiliates received a kickback or "commission" from Balboa. *Id., ¶¶ 30, 33, 56.*

Third, Balboa performed insurance tracking services for GMAC. *Id., ¶ 57.* As a result, it should have known immediately of any lapse in insurance coverage. However, it failed to identify the alleged lapse in Plaintiff's coverage for more than 17 months, making it impossible for her to cure the alleged lapse for the backdated policy periods.

Finally, Balboa communicated with GMAC borrowers on behalf of GMAC when their existing coverage was deemed to be deficient and/or lacking by GMAC and Balboa. *Id., ¶ 57.* As one former Balboa employee has explained:

> when you call in to customer service, for say, GMAC, you're not actually speaking to a GMAC employee. You're actually speaking to a Bank of America associate working for Balboa Insurance[3] who is required by their business to business contract with GMAC to state that they are, in fact, an employee of GMAC. The reasoning is that if you do not realize you're speaking to a Bank of America/Balboa Insurance employee, you have no reason to question the validity of the information you are receiving from them. If you call your insurance agent and ask them for the lienholder information for your GMAC/Wells Fargo/etc lien (home or auto) you will be provided with their name, but the mailing address will

---

[2] In order to avoid further inflated charges for force-placed windstorm insurance, Plaintiff has purchased her own windstorm insurance policy for her Property (even though this coverage was not required when she took out her mortgage). *Id., ¶ 34, n.6.* The cost of this coverage was $1,850, approximately 19% of the cost of the force-placed windstorm policies (which cost almost $10,000 each). *Ulbrich Decl., ¶ 6; Compl., ¶¶29, 32.*

[3] Bank of America recently sold certain assets of Balboa to QBE Insurance Group. *Id., ¶ 57, n.9.*

3

be a PO Box at one of **Balboa's 3 main tracking locations** (Moon Township/*Coreaopolis [sic], PA*, Dallas/Ft Worth, TX, or Phoenix/Chandler, AZ).

*Id., ¶ 57 & Ex. 18* (emphasis added). The form letters that were sent on GMAC letterhead to Plaintiff reference a Coraopolis, Pennsylvania post office box address – one of Balboa's three main tracking locations. *See id., ¶ 58 & Exs. 7-11.* Thus, it appears that these letters were sent by Balboa on behalf of GMAC. *Id., ¶ 58.*

### III.   Plaintiff's Unjust Enrichment Claim Against Balboa

Based on the above facts and the other facts set forth in her Complaint, Plaintiff asserts an unjust enrichment claim against Balboa. *Id., ¶ 7 & Count 5.* In connection with this claim, Plaintiff seeks restitution of all monies unjustly and inequitably retained by Balboa. *Id., ¶ 115.*

## ARGUMENT

### I.   Standard of Review.

In order to state a claim, all that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this standard, it is not necessary to plead "detailed factual allegations"; all that is required is that the complaint contain sufficient factual content that, when accepted as true, "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility standard is not akin to a "probability requirement." *Id.* Rather, it merely requires enough factual allegations "to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555.

In evaluating whether this standard has been met, "the court must accept all of the plaintiff's factual allegations as true, construing them in the light most favorable to the plaintiff." *Sallah ex rel. MRT LLC v. Worldwide Clearing LLC*, 2011 WL 5914034, at *2 (S.D. Fla.) (Scola, J.) (citing *Pielage v. McConnell,* 516 F.3d 1282, 1284 (11th Cir.2008)). Accordingly, this Court should give no weight to the Balboa's unsupported denials of certain allegations. *See Balboa Memo at 5.* The proper vehicle for denying allegations in a Complaint is an Answer, not a motion to dismiss. *See* Fed. R. Civ. P. 8(b).

4

## II. Plaintiff Has Stated a Valid Unjust Enrichment Claim Against Balboa.

Plaintiff has stated a valid claim for unjust enrichment against Balboa. To state a claim for unjust enrichment, a plaintiff must show that: (1) the plaintiff has conferred a benefit on the defendant, who had knowledge thereof; (2) the defendant voluntarily accepted and retained the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff. *Williams v. Wells Fargo Bank, N.A.*, 2011 WL 4368980, at *8 (S.D.Fla. Sept. 19, 2011) ("*Williams I*"). Plaintiff has pled each of these elements here. *See Compl., ¶ 113-15; see also id., ¶¶ 7, 16, 29-30, 32-35, 54-59*.

### A. Plaintiff Conferred a Benefit on Balboa.

Although Balboa contends that Plaintiff did not confer a benefit on it in connection with force-placed insurance (*see Balboa Memo at 6-7*), this argument is wrong for several reasons. First, the payments that were made to Balboa for this force-placed insurance came from Plaintiff's mortgage escrow account. *Compl., ¶ 34*. The funds in this account belong to Plaintiff. *See Wynkoop v. Wells Fargo Home Mortg., Inc.*, 2011 WL 2078005, at *4 (S.D. Fla. May 26, 2011). Accordingly, payment of funds from Plaintiff's escrow account is not materially different than payment of funds from Plaintiff's checking account or savings account. Indeed, Plaintiff has special rights in connection with her mortgage escrow account that go beyond the rights she would have in an ordinary bank account. *See Plaintiff's Memo in Opposition to GMAC Motion to Dismiss at 17*.

Second, GMAC's arguments about whether Plaintiff subsequently increased her escrow payments to replenish her escrow account are irrelevant. For one thing, these force-placed insurance charges wiped out whatever positive balance she had in her escrow account as a result of her prior escrow payments. For another, she is required to make up any shortage or overdraft in her escrow account. Therefore, Balboa cannot argue that the payments did not come out of her pocket. *See Abels v. JPMorgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273, 1279 (S.D. Fla. 2009) ("Defendant contends that it has received no benefit from Plaintiffs because, although it has demanded reimbursement of the $403 insurance payment, Plaintiffs have refused to pay. Plaintiffs argue that, pursuant to the terms of the mortgage, any unpaid insurance premiums are

5

added to the outstanding balance of the mortgage . . . . The Court agrees with Plaintiffs.").[4] Quite simply, these force-placed policies were purchased with real dollars – not Monopoly money – and came at Plaintiff's ultimate expense.

Third, even if Plaintiff were required to show that she paid funds into her escrow account to make up for the deficit that was created in her account as a result of the force-placed insurance charges, she has done so. Specifically, Plaintiff alleges that she paid an extra $730 into her escrow account in May of 2011 (after both of the force-placed windstorm policies were purchased in March and April, respectively), as an initial down payment on the deficit in her escrow account. *See Compl., ¶ 35, n.7.* Neither GMAC nor Balboa ever sent her a refund check for $730 or any other amount. Thus, it is clear that Plaintiff has suffered an out-of-pocket loss from her bank account in addition to a loss from her escrow account.

What Balboa is really is arguing is that Plaintiff's unjust enrichment claim should be dismissed because the money purportedly did not flow directly from Plaintiff to Balboa. *See Balboa Memo at 7.* However, this argument fails for similar reasons. First, the payments from Plaintiff's escrow account to Balboa were direct. Second, Plaintiff made deposits into her escrow account both before and after these force-placed policies were purchased. Finally, the fact that GMAC served as the trustee of Plaintiff's escrow account (accepting deposits from Plaintiff into the escrow account and making disbursements to Balboa out of the escrow account) does not preclude Plaintiff from proceeding with her unjust enrichment claim. As this court explained in *Williams I*:

> [J]ust because the benefit conferred by Plaintiffs on Defendants did not pass directly from Plaintiffs to Defendants—but instead passed through a third party—does not preclude an unjust-enrichment claim. Indeed to hold otherwise would be to undermine the equitable purpose of unjust enrichment claims. It would not serve the principles of justice and equity to preclude an unjust enrichment claim merely because the "benefit" passed through an intermediary before being conferred on a defendant.

---

[4] Presumably, Balboa would not argue that Plaintiff did not confer a benefit on Balboa if she took out a separate loan from GMAC to cover the force-placed insurance charges, and walked over to Balboa's headquarters with a cashier's check. Overdrawing her escrow account is not materially different. Indeed, an even more compelling analogy could be made here. Specifically, the present situation is no different than if Plaintiff took a loan against her 401k retirement account because, as noted above, the funds in Plaintiff's escrow account belong solely to Plaintiff.

6

*Williams I*, 2011 WL 4368980, at *9 (internal citations omitted; italics in original).  Indeed, even Balboa concedes that direct contact or contractual privity between Plaintiff and Balboa is not required.  *See Balboa Memo at 7; accord, Williams I*, 2011 WL 4368980, at * 8 ("Plaintiffs maintain that they need not have direct dealings or be in contractual privity with Defendants in order to bestow a direct benefit on them for purposes of an unjust-enrichment claim. Plaintiffs are correct.").[5]

### B. Balboa's Retention of the Benefit Would Be Unjust.

Balboa's only other defense to Plaintiff's unjust enrichment claim is that Balboa's retention of the force-placed insurance premiums would not be "unjust" (according to Balboa).  *See Balboa Memo at 9*.  This argument is ludicrous in light of the facts alleged.

### 1. It Was Unjust for Balboa to Accept Premiums for Expired Insurance

Accepting premium payments for expired or partially expired insurance coverage is clearly unjust.  As alleged in Plaintiff's complaint, "backdated (i.e., expired) insurance coverage provides no appreciable benefit to borrowers, [and] Balboa did not provide anything of real value in return for the premium payments that it received for already-expired coverage[.]"  *Compl., ¶ 114*.  Although Balboa argues that "an expired policy is not without benefit" (*Balboa Memo at 10 n. 8*), this argument is absurd.  The whole notion of "valuable expired insurance" is an oxymoron.[6]

The National Association of Insurance Commissioners ("NAIC") has condemned the practice of backdating coverage, stating that policies "should not be back-dated to collect premiums for a time period that has already passed[.]"  *Compl., Ex. 1 at 3*.  Consistent with this pronouncement, the court in *Williams I* allowed the plaintiffs' unjust enrichment claim to go forward based, in part, on similar allegations of backdating.  *See Williams I,* 2011 WL 4368980,

---

[5] Balboa's efforts to distinguish *Williams I* fall flat.  For the reasons explained more fully below, that case is directly on point.  *See infra* at 8-9.  Moreover, Balboa does not address *Abels* (another force-placed insurance case from this district) in its memorandum.  These cases are dispositive, and Balboa does not cite any contrary case law in its brief.  Notably, none of the cases cited by Balboa in the relevant section of its brief, other than *Williams I*, involved unjust enrichment claims in connection with force-placed insurance.

[6] The coverage that was force-placed on Plaintiff's property clearly provided no benefit to her, as no claim was ever made on either of the force-placed windstorm policies.  The fact that Plaintiff did not suffer any windstorm damage during the expired policy periods is not only obvious in hindsight, but should have been obvious at the time the policies were purchased.  The notion of "latent windstorm damage" is also an oxymoron.

at *1 (allowing claim for unjust enrichment to proceed against insurance companies and insurance brokers where plaintiffs alleged that "[f]orce-placed insurance is . . . applied retroactively for periods of time in the past where coverage has lapsed"); *accord*, *Am. Bankers' Ins. Co. of Florida v. Wells*, 819 So.2d 1196, 1204 (Miss. 2001) (plaintiffs stated valid claim that lender breached the implied covenant of good faith and fair dealing by "[i]llegally backdating worthless insurance coverage on . . . borrowers for the sole purpose of garnering extra unearned premiums for up to six months"). This Court should reach the same result.

The fact that lenders have the right to force-place coverage under their mortgage agreements where there is a lapse in coverage is not an excuse to backdate force-placed coverage for periods of time that already have expired. As the court explained in *Wells*:

> Nowhere in these documents is [Lender] given the right to backdate the force-placement of insurance coverage. [Lender] was given the right or option to force-place insurance under the Security Agreements, but since [the] documents are silent as to what the effective date of force-placed coverage should be, a reasonable person could logically assume that the force-placed coverage would start from the date of the force-placement, as opposed to the date of the lapse of insurance.

*Wells*, 819 So.2d at 1202. This is particularly true where, as here, coverage is backdated for periods that predate any notice of a lapse in coverage to the borrower.

### 2. It Was Unjust for Balboa to Obtain Inflated Premiums as Part of Its Kickback Scheme with GMAC.

Even if Balboa could make a showing that expired insurance coverage is not worthless (which it has not done and which would be premature at this stage), the amounts that Balboa charged for this force-placed coverage were outrageous in comparison to "benefit" provided. As noted above, the cost of the backdated policies ($9,673 and $9,708) was ***five to six times*** the amount that Plaintiff paid for non-backdated coverage ($1,850). *See supra* at 3 n.2.

It was unjust for Balboa to secure these handsome premium payments through improper means by offering GMAC kickbacks or "commissions" in connection with force-placed insurance. *Compl.,* ¶ *114*.[7] In this regard, the court's decision in *Williams I* is also on point. Like here, the plaintiffs in *Williams* alleged that the cost of force-placed insurance coverage was "nearly six times" the amount of the premium ordinarily paid by the lead plaintiff. *Williams I*, 2011 WL 4368980, at *2. Like here, the plaintiffs alleged that a "commission or kickback [was]

---

[7] Defendants' scheme appears to be similar to the one described in an award-winning investigative article in *American Banker* magazine. *See Compl.,* ¶¶ *110-11 & Ex. 1*.

8

paid in order to maintain [an] uncompetitive and exclusive relationship" with the mortgage servicer. *Id.* And like here, the plaintiffs alleged that insurance was force-placed "retroactively for periods of time in the past where coverage ha[d] lapsed." *Id.* at *1. Based on these allegations, the court determined that the plaintiffs properly alleged that both the defendant insurance company and the lender had been unjustly enriched by through a "manipulation" of the force-placed insurance process. *Id.* at *10; *see also Williams v. Wells Fargo Bank, N.A.*, 2011 WL 4901346, at *7-11 (S.D. Fla. Oct. 14, 2011) ("*Williams II*").

There is no reason to reach a different result here. In addition to *Williams*, several other cases have upheld unjust enrichment claims based on similar allegations of self-dealing or profiteering in connection with force-placed insurance. *See Abels*, 678 F. Supp. 2d at 1279; *Vician v. Wells Fargo Home Mortg.*, 2006 WL 694740, at *9 (N.D. Ind. Mar. 16, 2006); *Stevens v. Citigroup, Inc.*, 2000 WL 1848593, at *1, *3 (E.D. Pa. Dec. 15, 2000); *accord*, *Hofstetter v. Chase Home Finance LLC*, 2011 WL 1225900 at *15 (N.D. Cal. Mar. 31, 2011) (certifying class of borrowers to pursue claim that defendant engaged in unfair business practices "by charging inflated premiums and by generating commission income through self-dealing").

### 3. Balboa's Blame the Victim Defense Fails

Like so many guilty parties, Balboa attempts to blame the victim for its unjust and unlawful conduct. *See Balboa Memo at 9* ("Because Plaintiff had the ability and opportunity to avoid the windstorm insurance premiums by heeding the multiple notifications she received, her claim for unjust enrichment fails.") However, this "blame the victim" defense should be rejected for two reasons. First, the effective dates of the force-placed policies (October 1, 2009 and October 1, 2010) predated the first notice letter that Plaintiff ever received (on December 19, 2010). *See Compl., ¶¶ 27, 29, 32 & Exs. 7, 9, 11*. Second, and more fundamentally, notice of intent to engage in illegal conduct is not a license to engage in such conduct.

In *Williams*, the defendants also argued that "the unjust-enrichment claim fails because the force-placed insurance process was provided for in the Plaintiffs' mortgage contracts, and Plaintiffs could have avoided that process by keeping their insurance current." *Williams I*, 2011 WL 4368980, at *10. However, the court expressly rejected this argument. *Id.* As the court stated in its opinion:

> Plaintiffs allege that Defendants' manipulation of that process, in order to maximize their profits, supports the unjust-enrichment claim. ***The fact that Plaintiffs, had they maintained insurance coverage on their properties, could***

9

> *have avoided being subject to this manipulation does not render the claim insufficient, nor would such an argument serve the principles of equity and justice that the unjust-enrichment claim is intended to promote*.

*Id.* (emphasis added); *see also Alcoa Steamship Co., Inc. v. Perez*, 424 F.2d 433, 435 (1st Cir. 1970) ("Plaintiffs never sought this insurance . . . and have never made any claim against it. By appellee's reasoning a man who kidnapped a victim for ransom, upon being apprehended would have a claim for the taxi fare. Plaintiffs did not ask for this ride, and are not to be told that it must be paid for.").

The same reasoning applies here. Although Balboa latches on to a recent decision in the District of Massachusetts, *Lass v. Bank of America, N.A.*, 2011 WL 3567280 (D. Mass. 2011), the reasoning of case was expressly rejected by this Court in *Williams*. *See Williams I*, 2011 WL 4368980, at *10 ("Defendants' reliance on *Lass* . . . is misplaced."). This court also should decline to follow *Lass*, particularly since no insurance company was named as a defendant in that case.[8]

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Balboa's motion to dismiss in its entirety.

Respectfully submitted,

Dated: February 20, 2012

/s/ Timothy C. Selander
Timothy C. Selander, FL Bar No. 0036468
E-mail: selander@nka.com
Kai Richter, MN Bar No. 0296545*
E-mail: krichter@nka.com
E. Michelle Drake, MN Bar No. 0387366*
E-mail: drake@nka.com
**NICHOLS KASTER, PLLP**
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 215-6870

*admitted pro hac vice

---

[8] The *Lass* case is currently on appeal. Although no opinion has yet been issued by the First Circuit, the panel expressed skepticism with the defendant bank's position at oral argument. *See* http://www.ca1.uscourts.gov/files/audio/audiorss.php (audio at 18:58 - 19:20).

        Erika Deutsch Rotbart, FL Bar No. 0047686
        E-Mail: edrotbart@dralawfirm.com
        **DEUTSCH ROTBART & ASSOCIATES, P.A.**
        4755 Technology Way, Suite 106
        Boca Raton, FL 33431
        Telephone: (561) 361-8010
        Fax: (561) 361-8086

        **ATTORNEYS FOR PLAINTIFF**
        **CHRISTINA ULBRICH AND THE**
        **PUTATIVE CLASSES**

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this **20th** day of **February 2012**, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the forgoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

      /s/ Timothy C. Selander
      Timothy C. Selander