# Exhibit 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 11-CIV-62424-SCOLA/SELZER**

CHRISTINA ULBRICH, as an individual and as a
Representative of the classes,

        Plaintiff,

v.

GMAC MORTGAGE, LLC, formerly known as
GMAC MORTGAGE CORPORATION, and
BALBOA INSURANCE SERVICES, INC.

        Defendants.

_____/

## CLASS ACTION SETTLEMENT AGREEMENT

1.     Plaintiff Christina Ulbrich ("Plaintiff"), as an individual and as a representative of the Settlement Class forth below, and Defendant Balboa Insurance Services, Inc. ("BIS") (collectively, the "Settlement Parties"), hereby enter into this Class Action Settlement Agreement ("Settlement Agreement"), subject to the approval of the Court.

## DEFINITIONS

2.     As used in this Settlement Agreement, the following terms shall have the following meanings:

    2.1.    "Action" shall mean the above-captioned lawsuit.

    2.2.    "Applicable Letter Date" shall mean the date that a Notice Letter or Renewal Letter was first sent to a Participating Class Member in connection with a Qualifying Windstorm Policy.  For purposes of this definition, the Applicable Date for any Renewal Policy shall be the Renewal Letter date, and not the date of the first Notice Letter that was sent in connection with Original Policy.

    2.3.    "BIS" or "Balboa Insurance Services" shall mean Defendant Balboa Insurance Services, Inc.

    2.4.    "CIS" or "Countrywide Insurance Services" shall mean Countrywide Insurance Services, Inc.

2.5.    "Class Counsel" shall mean Nichols Kaster, PLLP.

2.6.    "Class Data" shall mean the borrower spreadsheets and other data produced to Class Counsel by BIS in connection with this Action.

2.7.    "Class Funds" shall mean the funds in the Settlement Fund that are available for distribution to Participating Settlement Class Members, after accounting for any payments approved by the Court for distribution to Class Counsel and the Class Representative pursuant to Paragraphs 5.2 and 5.3.

2.8.    "Final Approval Hearing" shall mean the hearing held by the Court in connection with the Settlement Parties' Final Approval Motion.

2.9.    "Final Approval Motion" shall mean the Settlement Parties' motion seeking final approval of this Settlement Agreement.

2.10.   "GMAC" shall mean GMAC Mortgage, LLC.

2.11.   "Net Settlement Payment Amount" shall mean the amount of money that Participating Class Members are entitled to receive pursuant to Paragraph 4.3 of this Settlement Agreement.

2.12.   "NMC" shall mean Newport Management Corporation.

2.13.   "Notice Letter" shall mean a letter sent to a Participating Class Member notifying them of an alleged lapse or deficiency in their windstorm insurance coverage.

2.14.   "Original Policy" shall mean the first Qualifying Windstorm Policy purchased for a Participating Class Member's property by GMAC.

2.15.   "Participating Class Member" shall mean a Settlement Class Member who did not timely opt out of this Settlement Agreement by the Settlement Opt-Out Deadline.

2.16.   "Payment Notice" shall mean the letter from Class Counsel provided by Paragraph 4.4, which shall accompany each Participating Class Member's Settlement Payment.

2.17.   "Plaintiff" or "Class Representative" shall mean the named Plaintiff in this Action, Christina Ulbrich.

2.18.   "Preliminary Approval Motion" shall mean the Settlement Parties' motion seeking preliminary approval of this Settlement Agreement, as provided in Paragraph 6.1.

2.19.   "Preliminary Approval Order" shall mean the Court's Order preliminarily approving this Settlement Agreement.

2.20.   "Renewal Letter" shall mean a letter advising a Participating Class Member of GMAC's intent to purchase a Renewal Policy for their property.

2.21.   "Renewal Policy" shall mean any Qualifying Windstorm Policy after the Original Policy.

2.22.   "Qualifying Windstorm Coverage" shall mean the coverage period during which any Qualifying Windstorm Policy was effective, exclusive of any periods for which coverage was cancelled.

2.23.   "Qualifying Windstorm Policy" shall mean a lender-placed windstorm insurance policy covering the property of any Participating Class Member, which was (1) obtained by GMAC with the involvement of BIS, CIS, SSIS, or NMC; and (2) with a coverage effective start date between September 15, 2007 and December 31, 2011, as reflected in the Class Data.

2.24.   "Reimbursable Commissions" shall mean any commissions retained by BIS, CIS, SSIS, or NMC in connection with Qualifying Windstorm Coverage for a Participating Class Member.

2.25.   "Released Parties" shall mean BIS, CIS, and SSIS, and their current and former affiliates, including Newport Management Corporation

2.26   "SSIS" shall mean Seattle Specialty Insurance Services, Inc.

2.27.   "Settlement" or "Settlement Agreement" shall mean this Settlement Agreement and the exhibit thereto.

2.28.   "Settlement Account" shall mean an interest-bearing escrow account with a federally-chartered national bank established by Class Counsel for purposes of administering the Settlement Funds.

2.29.   "Settlement Class" shall mean: "All borrowers who had lender placed windstorm insurance issued for their property with effective coverage start dates between September 15, 2007 and  December 31, 2011 by GMAC Mortgage, LLC with the involvement of Balboa Insurance Services, Countrywide Insurance Services, Seattle Specialty Insurance Services, and/or Newport Management Corporation," as set forth in the Class Data produced to Plaintiff by BIS.

2.30.   "Settlement Effective Date" shall mean:

3

      a.      thirty-one (31) days after the Final Approval Order specified in Paragraph 9.3; or

      b.      in the event of an appeal from the Final Approval Order, thirty-one (31) days after the date upon which all appellate and/or other proceedings in connection with this Action have been resolved.

2.31.  "Settlement Fund" or "Settlement Funds" shall mean the funds paid into the Settlement Account by BIS pursuant to Paragraph 4.1 of this Settlement Agreement, plus any interest payments received on those funds.

2.32.  "Settlement Notice" shall mean the notice of settlement in the form attached hereto as Exhibit 1, or as otherwise approved by the Court.

2.33.  "Settlement Notice Date" shall mean the date that Settlement Notices are required to be mailed by the Court.

2.34.  "Settlement Opt-Out Deadline" shall mean 45 days from the Settlement Notice Date.

2.35.  "Settlement Opt-Out Form" shall mean the form that shall be included with the Settlement Notice for the purpose of allowing Class Members to exclude themselves from this Settlement Agreement.

2.36.  "Settlement Opt-Outs" shall mean the Settlement Class Members who completed and signed a Settlement Opt-Out Form, and sent such form to Class Counsel by the Settlement Opt-Out Deadline.

2.37.  "Settlement Payment" shall mean the payment that Participating Class Members are entitled to receive under Paragraph 4.3 of this Settlement Agreement.

## RECITALS

3.1.  Plaintiff filed this Action against GMAC and BIS on November 14, 2011.  *ECF No. 1.*  In her Class Action Complaint, Plaintiff asserted a claim against BIS for unjust enrichment, and also asserted claims against GMAC for breach of contract/breach of the covenant of good faith and fair dealing, unjust enrichment, breach of fiduciary duty, and violation of the Florida Deceptive and Unfair Trade Practices Act.

3.2.  On May 17, 2012, GMAC filed a Notice of Bankruptcy and Effect of Automatic Stay.  *ECF No. 57.*  The following day, on May 18, 2012, the Court issued an order staying the

case as it pertained to GMAC.  *ECF No. 58.*[1]  However, the Action continued to proceed against BIS.  *ECF No. 60.*

3.3.    On August 15, 2012, the Court issued an Order denying BIS's Motion to Dismiss Plaintiff's unjust enrichment claim against BIS.  Following this ruling, Plaintiff and BIS participated in mediation on October 16, 2012, and agreed to settle this action.

3.4.    At all times, the Settlement Parties have negotiated at arm's length.  Based on their review of the Class Data, their investigation of the relevant facts, their analysis of the claims and defenses in this action, and the Court's legal rulings to date, Plaintiff and Class Counsel believe that this Settlement Agreement constitutes a fair and appropriate resolution of this Action on behalf of the Settlement Class.

3.5.    For the purposes of this settlement only, the Settlement Parties hereby agree that this Action may proceed as a class action for purposes of settlement and hereby stipulate to the certification of the Settlement Class for purposes of this settlement.  BIS does not agree to certification of the Settlement Class for any purpose other than to effectuate the Settlement Agreement.

3.6.    The certification of the Settlement Class shall be applicable only with respect to the settlement of the Action. In the event that the Settlement Agreement is terminated pursuant to its terms or is not approved by this Court or any other court, the certification of the Settlement Class shall be vacated, the Action shall proceed as though the Settlement Class had never been certified, and no reference to the prior Settlement Class shall be made for any purpose.

3.7.    By entering into this Settlement Agreement, BIS does not admit any wrongdoing, and this Settlement Agreement shall not constitute an admission of liability by BIS or any Released Party.

**<u>MONETARY RELIEF</u>**

4.1.    <u>Settlement Payment</u>.  Within ten (10) days of the Settlement Effective Date, BIS shall tender $650,000 into the Settlement Account.

---

[1] On August 16, 2012, the United States Bankruptcy Court for the Southern District of New York issued an order partially lifting the automatic stay to allow the Court in this Action to rule on GMAC's Motion to Compel Arbitration and for a Stay or, in the Alternative, Dismiss the Complaint.  *See ECF No. 77.*  The Court subsequently granted GMAC's Motion to Compel Arbitration and for a Stay.  *See ECF No. 90.*

4.2.    <u>Allocation</u>.   The Settlement Funds in the Settlement Account shall be allocated amongst Participating Class Members, on a gross basis, as follows:

      A.    Participating Class Members shall be allocated 100% of any Reimbursable Commissions associated with Qualifying Windstorm Coverage prior to the Applicable Letter Date.[2]

      B.    The remainder of the Settlement Funds shall be allocated amongst Participating Class Members in proportion to the Reimbursable Commissions associated with Qualifying Windstorm Coverage on or after the Applicable Date.

4.3    <u>Net Settlement Payment Amount</u>.   The amounts allocable to Participating Class Members pursuant to Paragraph 4.2 shall be subject to adjustment for any costs, attorneys fees' or class representative compensation awarded by the Court pursuant to Paragraphs 5.2 and 5.3 below, which shall be apportioned amongst Participating Class Members in proportion to their respective allocations from the Settlement Fund.

4.4.    <u>Distribution to Class Members</u>.   Within fourteen (14) days of the Settlement Effective Date, Class Counsel shall distribute the Class Funds in the Settlement Account to Participating Class Members, consistent with each Participating Class Member's Net Settlement Payment Amount.   These Settlement Payments shall be distributed to Participating Class Members in the form of a check, accompanied by a letter from Class Counsel, and shall be sent via first class mail.   For purposes of this mailing, Class Counsel shall use the addresses that were used to send the Settlement Notice, subject to appropriate updating prior to mailing.   Appropriate updating shall include the following:

      a.    Class Counsel will check each address against the United States Post Office National Change of Address Database;

      b.    Class Counsel shall update addresses based on forwarding information received from the United States Post Office; and

---

[2] For example, if $1,200 in Reimbursable Commissions were paid  on a Qualifying Windstorm Policy that was effective from January 1, 2009-January 1, 2010, and the Applicable Letter Date Associated with the Qualifying Windstorm Policy was April 1, 2009, the Participating Class Member would be allocated $295.89 for the Qualifying Windstorm Coverage prior to the Applicable Letter Date ($1,200 * 90/365 = $295.89).

c.      Class Counsel shall update addresses based on any requests to do so received from Class Members.

4.5.      <u>Re-Mailing of Returned Settlement Payments</u>.  Any Settlement Payments that are returned as non-deliverable with a forwarding address shall promptly be re-mailed by Class Counsel to such forwarding address.  To the extent that any Settlement Payments are returned as non-deliverable without a forwarding address, Class Counsel shall attempt to locate valid address information for the intended recipients of such Settlement Payments, and shall promptly re-mail the Settlement Payment, as applicable, to any Participating Class Member for whom new address information is identified

4.6.      <u>Period to Accept Payment & Handling of Unclaimed Funds</u>.  Participating Class Members shall have 60 days from the date of their Payment Notice to cash the check accompanying the Payment Notice.  All unclaimed monies in the Settlement Fund after that time shall be paid to the National Consumer Law Center.  No unclaimed funds will revert to BIS.

**<u>COSTS, ATTORNEYS' FEES, AND CLASS REPRESENTATIVE COMPENSATION</u>**

5.1.      <u>Each Side to Bear Its Own Expenses</u>.  Plaintiff and BIS shall bear their own costs and expenses in connection with this Action.

5.2      <u>Motion for Costs, Expenses, and Attorneys' Fees</u>.  Upon filing the Final Approval Motion, Class Counsel shall file a separate Motion for Costs, Expenses, and Attorneys' Fees to be paid from the Settlement Fund in accordance with Fed. R. Civ. P. 23(h).  This motion shall seek reimbursement of Plaintiff's costs and expenses in connection with this Action (including the cost of the Settlement Notice and Payment Notices), and also shall seek reimbursement for attorneys' fees in an amount up to one-third of the Settlement Fund.[3]  BIS shall not oppose this motion.

5.3      <u>Class Representative Award</u>.  In recognition of Plaintiff's services as class representative, Plaintiff shall be paid a class representative award, from the Settlement Fund, in the amount of $10,000, subject to the approval of the Court.

---

[3] This Settlement Agreement is not contingent upon any particular award of costs, expenses, or attorneys' fees, which shall rest in the discretion of the Court.

## PRELIMINARY APPROVAL MOTION

6.1     On or before November 20, 2012, Class Counsel shall submit this Settlement Agreement to the Court for review, and shall file a Preliminary Approval Motion requesting the Court for an Order:

a.      preliminarily approving this Settlement Agreement for purposes of issuing notice to the Settlement Class;

b.      Approving the Settlement Notice and notice methodology described in Paragraphs 7.1 through 7.3 of this Settlement Agreement; and

c.      Scheduling a Final Approval Hearing to be held no sooner than 90 days following entry of the Preliminary Approval Order (or on such date as the Court may direct), to consider the Settlement's fairness, reasonableness and adequacy, and to consider Plaintiff's Motion for Costs, Expenses, and Attorneys' Fees.

## NOTICE OF SETTLEMENT

7.1.    <u>Mailing of Settlement Notice</u>.  On or before the Settlement Notice Date, Class Counsel shall send the Settlement Notice to each Settlement Class member via first class mail in the form attached hereto as Exhibit 1.  In advance of this mailing, BIS shall supply Class Counsel with a mail merge file containing the most recent address information that BIS has on file, or that is otherwise available to BIS, for each Settlement Class Member.  Class Counsel shall use this address information for purposes of mailing the Settlement Notice, subject to appropriate cross-checking against the United States Post Office National Change of Address Database.

7.2.    <u>Re-Mailing of Returned Settlement Notices</u>.  Any Settlement Notices that are returned as non-deliverable with a forwarding address shall promptly be re-mailed by Class Counsel to such forwarding address.  To the extent that any Settlement Notices are returned as non-deliverable without a forwarding address, Class Counsel shall conduct reasonable research to locate valid address information for the intended recipients of such Settlement Notices, and shall promptly re-mail the Settlement Notice, as applicable, to any Settlement Class Members for whom new address information is identified.

7.3.    <u>Website Notice</u>.  On or before the Settlement Notice Date, Class Counsel shall post the following information on Class Counsel's website:

A.      The Settlement Agreement;

B. The Court's Preliminary Approval Order;

C. The Settlement Notice; and

D. The Preliminary Approval Motion and any papers filed on the public record in support of the Preliminary Approval Motion.

7.4 <u>CAFA Notice</u>. BIS shall serve the Class Action Fairness Act ("CAFA") notice required by 28 U.S.C. § 1715 within 10 days of the filing of the Preliminary Approval Motion. BIS shall bear the cost of this CAFA notice.

<b><u>OPT-OUTS AND OBJECTIONS</u></b>

8.1. <u>Opting Out of the Settlement</u>: Any Settlement Class Members who wish to exclude themselves from the Settlement must mail Class Counsel a signed Settlement Opt-Out Form, postmarked no later than the Settlement Opt-Out Deadline**.** Class Counsel shall file a roster of Settlement Opt-Outs (and a separate roster of the Participating Class Members) with the Court within seven (7) days of the Settlement Opt-Out Deadline.

8.2. <u>Objections to Settlement</u>: Any Settlement Class Members who wish to object to the Settlement must mail Class Counsel their written objection, postmarked no later than the Settlement Opt-Out Deadline, setting forth their name, address, account number, grounds for objection, and the identity of their counsel (if applicable), and indicate whether they and/or their counsel will appear at the Final Approval Hearing. Class Counsel shall file such objections with the Court within seven (7) days of the Settlement Opt-Out Deadline.

<b><u>FINAL APPROVAL MOTION</u></b>

9.1 <u>Final Approval Motion</u>. At least fourteen (14) calendar days prior to Final Approval Hearing, the Settlement Parties shall file a joint motion requesting that the Court grant final approval of the Settlement Agreement, and addressing any timely submitted Objections to the Settlement.

9.2 <u>Matters to Be Considered at Final Approval Hearing</u>. At the Final Approval Hearing, the Court will consider and determine, *inter alia*, whether this Settlement Agreement should be approved, whether the terms of the Settlement are fair, reasonable, and adequate, whether any objections to the Settlement should be overruled, whether Plaintiff's requested costs, expenses, and attorneys' fees are reasonable, whether the requested Class Representative award is reasonable, and whether an order finally approving the Settlement should be entered.

9.3     This Settlement Agreement is subject to and conditioned upon the Court's entry of a Final Approval Order which grants final approval of this Settlement Agreement and:

(a)     finds that the Settlement Notice provided in this action satisfies the requirements of due process and Fed. R. Civ. P. 23(e)(1);

(b)     finds that the Settlement Agreement is fair, reasonable and adequate to the Settlement Class, and that each Participating Class Member shall be bound by this Settlement Agreement, including the release in Paragraph 12.1; and

(c)     dismisses on the merits and with prejudice all claims asserted in the Action against BIS.

## TERMINATION OF AGREEMENT

10.1.   Either Settlement Party shall each have the right to unilaterally terminate this Settlement Agreement, upon written notice to the other party, within fourteen (14) days of any order refusing to grant approval to this Settlement Agreement in any material respect.

10.2    If this Settlement Agreement is terminated pursuant to its terms, any order certifying the Settlement Class shall be vacated nunc pro tunc, and the Action shall proceed as though the Settlement Class had never been certified, without prejudice to the Parties' rights including but not limited to the right to later seek or oppose class certification.

## NO ADMISSION

11.1.   Nothing herein shall constitute an admission by BIS, or any of the other Released Parties, of any wrongdoing or liability in connection with this Action.  BIS has denied and continues to deny any wrongdoing or liability in connection with the claims asserted in Plaintiff's Complaint.  BIS has voluntarily elected to settle this Action on the terms specified in this Settlement Agreement solely to avoid the uncertainty and costs associated with further litigation.

11.2.   By accepting the relief specified in Paragraphs 4.2 and 4.3 this Settlement Agreement, Plaintiff and the Participating Class Members do not admit or concede that additional relief would have been unavailable to them if they had pursued this Action through trial.  Plaintiff and the Participating Class members accept the compromise relief provided herein, and deem it adequate for purposes of settlement, in light of the uncertainty and costs associated with further litigation.

## RELEASE OF CLAIMS

12.1.  <u>Class Release</u>.  Upon the Settlement Effective Date, each Participating Class Member, and each of their respective spouses, children, executors, representatives, guardians, wards, heirs, estates, bankruptcy estates, bankruptcy trustees, trustees, successors, predecessors, joint tenants, tenants in common, tenants by the entirety, co-borrowers, co-obligors, co-debtors, attorneys, agents and assigns, and all those who claim through them or who assert claims (or could assert claims) on their behalf  shall be deemed to have completely, unconditionally, irrevocably, and forever released and completely, unconditionally, irrevocably, and forever discharged Balboa Insurance Services, Countrywide Insurance Services, Seattle Specialty Insurance Services, and their current and former affiliates, including Newport Management Corporation (the "Released Parties"), from any and all claims or causes of action asserted in this Action which relate to the lender-placed windstorm policies identified by Balboa Insurance Services in the Class Data (the "Released Claims").[4]

12.2.  <u>Agreement Not to Assert Released Claims Against Released Parties</u>.  Each Participating Class Member hereby agrees not to institute or pursue any lawsuit, arbitration, administrative proceeding, or other proceeding of any kind against the Released Parties asserting the Released Claims, or seek any further relief from the Released Parties relating to the Released Claims beyond the relief provided by this Settlement Agreement.

12.3.  <u>No Additional Costs or Fees</u>.  Subject to Paragraph 5.2 of this Settlement Agreement, the Settlement Parties shall bear their own costs, expenses, and attorneys' fees, and neither Settlement Party shall seek additional costs, expenses, or attorneys' fees beyond the amounts approved by the Court in connection with Plaintiff's Motion for Costs, Expenses, and Attorneys' Fees.

## MISCELLANEOUS

13.1.  <u>Acknowledgment</u>.  Each of the Settlement Parties acknowledges and represents such Settlement Party (a) has fully and carefully read this Settlement Agreement prior to execution; (b) has been fully apprised by counsel of the legal effect and meaning of the terms of this Settlement Agreement; (c) has had the opportunity to undertake whatever investigation or

---

[4] For purposes of this settlement, "claims" is not limited only to the cause of action asserted in the Complaint, but means any causes of action of any kind based on the same alleged wrongs. *See Hofstetter v. Chase Home Finance, LLC*, 2011 WL 54415073 (N.D. Cal. Nov. 8, 2011).

inquiry is necessary or appropriate in connection with this Settlement Agreement and the Action; (d) has been afforded the opportunity to negotiate any and all terms of this Settlement Agreement; and (e) is executing this Settlement Agreement voluntarily and free from any undue influence, coercion, or duress of any kind.

13.2.   Counterparts.   This Settlement Agreement may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same agreement. This Settlement Agreement may be executed by signature delivered by facsimile or PDF, and need not be the original "ink" signature.  A complete set of executed counterparts shall be filed with the Court.

13.3.   Authority.  Each person executing this Settlement Agreement on behalf of any of the Settlement Parties hereto represents that such person has the authority to so execute this Settlement Agreement.

13.4.   Entire Agreement.   This Settlement Agreement constitutes the entire fully-integrated agreement among the Settlement Parties.   No representations, warranties or inducements of any kind have been made by either Settlement Party relating to this Settlement Agreement, other than as set forth herein.

13.5.   Headings and Captions.   The headings and captions inserted in this Settlement Agreement are for convenience only and in no way define, limit, or otherwise describe the scope or intent of this Settlement Agreement, or any term of this Settlement Agreement.

13.6.   No Oral Modifications.  This Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all of the Settlement Parties or their successors-in-interest.  No oral amendment or modification shall be permitted or effective.

13.7.   Notices.   All notices to the Settlement Parties or counsel required by this Settlement Agreement shall be made in writing and communicated by U.S. Mail and email to the following:

If to Plaintiff or Class Counsel:
Kai Richter
KRichter@nka.com
Nichols Kaster, PLLP
4600 IDS Center
80 South 8th Street
Minneapolis, MN 55402

12

<u>If to BIS or BIS's Counsel</u>:
Robyn C. Quattrone
rquattrone@buckleysandler.com
BuckleySandler LLP
1250 24th Street N.W.
Suite 700
Washington, D.C. 20037

13.8.    <u>Governing Law</u>.  This Agreement shall be governed by the laws of the State of Florida.

13.9.    <u>Jurisdiction</u>.    The Court shall retain jurisdiction to enforce this Settlement Agreement for a period of one (1) years from the Settlement Effective Date.  The Parties consent to jurisdiction for this purpose.

13.10.    <u>Admissibility</u>.  This Settlement Agreement shall not be admissible in any lawsuit, administrative action, or any judicial or administrative proceeding if offered to show, demonstrate, evidence or support a contention that BIS or any of the Released Parties acted illegally, improperly or in breach of law, contract, ethics, or proper conduct.

13.11.    <u>Purpose</u>.  This Settlement Agreement is for settlement purposes only. Neither the fact of, any provision contained in, nor any action taken under this Settlement Agreement, shall be construed as an admission or concession of the validity of any claim (*see footnote 4*) or any factual allegation that was or could have been made by Plaintiff in the Action, or of any wrongdoing, fault, violation of law, or liability of any kind on the part of BIS or any of the Released Parties. Neither this Settlement Agreement, nor any class certification pursuant to the Settlement Agreement, shall constitute, in this or in any other proceeding, an admission, finding or evidence that any requirement for class certification is satisfied in the Action, or any other litigation, except for the limited purposes related to this Settlement Agreement.

13.12.    <u>Use of Statements</u>.  The negotiations, statements and representations related to this Settlement Agreement are also for settlement purposes only, and therefore shall not be offered or be admissible in evidence against BIS, or any of the Released Parties, or cited or referenced to in any other action or proceeding.

Dated: 11/20/2012

Robyn Quattrone, Esq.
Buckley Sandler LLP
On behalf of Defendant Balboa Insurance
Services, Inc.

Dated: _____

_____
Christina Ulbrich, individually and on behalf
of the Settlement Class

APPROVED AS TO FORM AND CONTENT

Dated: _____

_____
Kai Richter, Esq.
Nichols Kaster, PLLP
Counsel for Plaintiff & the Settlement Class

14

Dated: _____

_____
Robyn Quattrone, Esq.
Buckley Sandler LLP
On behalf of Defendant Balboa Insurance
Services, Inc.

Dated: _11/20/12_

_Christina Ulbrich_

Christina Ulbrich, individually and on behalf
of the Settlement Class

APPROVED AS TO FORM AND CONTENT

Dated: _11/20/2012_

_Kai Richter_

Kai Richter, Esq.
Nichols Kaster, PLLP
Counsel for Plaintiff & the Settlement Class

# Exhibit 1

# OFFICIAL NOTICE OF PROPOSED CLASS ACTION SETTLEMENT AND FAIRNESS HEARING

### *Ulbrich v. GMAC Mortgage, LLC and Balboa Insurance Services, Inc.*
### Case No. 11-CIV-62424 (S.D. Fla.)

This is an important notice from the United States District Court for the Southern District of Florida regarding a proposed class action settlement and upcoming hearing in the above-referenced class action lawsuit that may affect your rights.

### Background

On November 14, 2011, Plaintiff Christina Ulbrich ("Plaintiff") filed this class action lawsuit against Defendants GMAC Mortgage, LLC ("GMAC") and Balboa Insurance Services, Inc. ("BIS"). In her Complaint, Plaintiff alleged that GMAC improperly force-placed backdated wind insurance policies on her property and the properties of other GMAC borrowers, which were procured through BIS. Plaintiff further alleged that that GMAC and BIS financially benefitted from force-placing this insurance. Based on this alleged conduct, which Defendants deny, Plaintiff's Complaint asserted four claims against GMAC for (1) breach of contract/breach of the covenant of good faith and fair dealing, (2) unjust enrichment, (3) breach of fiduciary duty, and (4) violation of the Florida Deceptive Trade Practices Act ("FDUTPA"). In addition, Plaintiff asserted a fifth claim against BIS for unjust enrichment.

After Plaintiff filed the lawsuit, GMAC filed a Chapter 11 bankruptcy petition on May 14, 2012, and Plaintiff's claims against GMAC are presently stayed. However, the action continued to proceed against BIS, and Plaintiff has now reached a proposed class action settlement with BIS. The terms of this settlement are summarized below.

### Settlement Class Certified By The Court

On [DATE], the Court certified a "Settlement Class" for purposes of the proposed settlement. This notice is being sent to you because you have been identified as a member of the Settlement Class certified by the Court, which includes the following persons:

> All borrowers who had lender placed windstorm insurance issued for their property with effective coverage start dates between September 15, 2007 and December 31, 2011 by GMAC Mortgage, LLC with the involvement of Balboa Insurance Services, Countrywide Insurance Services, Seattle Specialty Insurance Services, and/or Newport Management Corporation.

### Summary of Proposed Settlement Terms

1. Payment to Class Members

Under the terms of the proposed settlement, BIS will pay $650,000 into a Settlement Fund for the benefit of the Settlement Class. The monies in this Settlement Fund will be allocated amongst members of the Settlement Class, **on a gross basis**, as follows:

- Settlement Class Members shall be allocated 100% of any commissions that were earned by BIS, CIS, SSIS, or NMC on windstorm coverage for their property prior to the "Applicable Letter Date" (*i.e.,* the date of the first "warning letter" sent before

the coverage was force placed, or the date of the first "renewal letter" sent before renewal coverage was force placed);[1] and

- The remainder of the Settlement Funds shall be allocated amongst Settlement Class members in proportion to the commissions earned by BIS, CIS, SSIS, or NMC on or after the Applicable Letter Date.

These gross allocations will then be adjusted for any costs, attorneys fees' or class representative compensation awarded by the Court, which shall be apportioned amongst the Settlement Class members in proportion to their respective allocations from the Settlement Fund.

2. Payment to Class Counsel and Class Representatives.  In connection with this proposed settlement agreement, class counsel (Nichols Kaster, PLLP) will request attorneys' fees in an amount up to one-third of the total settlement fund, plus any out-of-pocket costs in connection with this lawsuit or the settlement.  In addition, the proposed settlement provides that Plaintiff will receive $10,000 as a class representative award.  At the present time, the Court has not yet determined what amount of compensation will be awarded class counsel or the class representative.  However, to the extent that any amounts are awarded, these amounts will be deducted from the Settlement Fund before distribution to the Settlement Class, and the amounts paid to members of the Settlement Class will be reduced proportionately.

3.  Release of Claims and Agreement Not to Assert Released Claims.  Under the proposed Settlement Agreement, participating class members will give up certain claims against BIS, CIS, SSIS and NMC, in return for the relief set forth in the Settlement Agreement.  The release provisions are set forth in Paragraphs 12.1 and 12.2 of the proposed Settlement Agreement.  These release provisions provide, in full, as follows:

12.1.  Class Release.  Upon the Settlement Effective Date, each Participating Class Member, and each of their respective spouses, children, executors, representatives, guardians, wards, heirs, estates, bankruptcy estates, bankruptcy trustees, trustees, successors, predecessors, joint tenants, tenants in common, tenants by the entirety, co-borrowers, co-obligors, co-debtors, attorneys, agents and assigns, and all those who claim through them or who assert claims (or could assert claims) on their behalf  shall be deemed to have completely, unconditionally, irrevocably, and forever released and completely, unconditionally, irrevocably, and forever discharged Balboa Insurance Services, Countrywide Insurance Services, Seattle Specialty Insurance Services, and their current and former affiliates, including Newport Management Corporation (the "Released Parties"), from any and all claims or causes of action asserted in this Action which relate to the lender-placed windstorm policies identified by Balboa Insurance Services in the Class Data (the "Released Claims").[2]

---

[1]  For example, if $1,200 in commissions were paid on a windstorm policy for a Settlement Class member that was effective from January 1, 2009-January 1, 2010, and the Applicable Letter Date associated with the windstorm policy was April 1, 2009, the Settlement Class Member would be allocated $295.89 for the windstorm coverage prior to the Applicable Letter Date ($1,200 * 90/365 = $295.89).

[2]  For purposes of this settlement, "claims" is not limited only to the cause of action asserted in the Complaint, but means any causes of action of any kind based on the same alleged wrongs.  *See Hofstetter v. Chase Home Finance, LLC*, 2011 WL 54415073 (N.D. Cal. Nov. 8, 2011).

12.2.   <u>Agreement Not to Assert Released Claims Against Released Parties</u>.  Each Participating Class Member hereby agrees not to institute or pursue any lawsuit, arbitration, administrative proceeding, or other proceeding of any kind against the Released Parties asserting the Released Claims, or seek any further relief from the Released Parties relating to the Released Claims beyond the relief provided by this Settlement Agreement.

## Your Legal Rights and Options

If you wish to participate in the settlement and receive the benefits to which you are entitled, you do not need to do anything.  However, if you do <u>not</u> wish to participate in the settlement and do not wish to be bound by the release provisions and other provisions of the proposed settlement, you must exclude yourself from the Settlement Class.  In order to exclude yourself from the Settlement Class, you must complete the enclosed Opt Out Form, sign it, and return it to Class Counsel at the following address no later than [OPT OUT DEADLINE]:

Nichols Kaster, PLLP

Attention: Settlement Class Administrator

4600 IDS Center

80 South Eighth Street

Minneapolis, MN 55402

## Fairness Hearing

On [FINAL APPROVAL HEARING DATE], at _____ [a.m.] [p.m.], in Courtroom 3 on the 12th Floor of the United States Courthouse, 400 North Miami Avenue, Miami, Florida, the Court will hold a fairness hearing to determine whether to grant final approval of the proposed settlement, and to determine the appropriate amount of compensation to be awarded to class counsel and/or the class representative out of the settlement fund.  You have the right to appear at the final approval hearing in person or through your own attorney.  If you wish to object to the proposed settlement or the amount of compensation requested by class counsel and/or the class representative, you must send class counsel, at the address listed above, a letter setting forth your name, address, account number, grounds for objection, and the identity of your attorney (if applicable), and indicate whether you and/or your attorney will appear at the Final Approval Hearing.  All objections to the settlement and requests to appear at the Final Approval Hearing must be postmarked no later than [OPT OUT DEADLINE].

**In the event that the Court grants final approval of the proposed settlement, the Court will enter a judgment that will bind all Settlement Class members who did not timely submit an opt-out form to the terms of the Settlement Agreement, including the release in Paragraph 12.1 and the agreement not to sue in Paragraph 12.2.**

## How to Obtain Additional Information

To find out more information about this class action, you should visit Class Counsel's website at <u>www.nka.com</u>.  On this website, you can find a copy of this Notice of Proposed Class Action Settlement, the proposed Settlement Agreement, Plaintiffs' motion for preliminary approval of the proposed settlement, and the Court's Order granting preliminary approval of the proposed settlement.  If you have questions after reviewing these materials, you may contact Class Counsel at [NUMBER HERE].  Please do <u>not</u> send any questions to the Court.

# REQUEST TO OPT OUT OF CLASS ACTION SETTLEMENT

### *Ulbrich v. GMAC Mortgage, LLC and Balboa Insurance Services, Inc.*
### Case No. 11-CIV-62424 (S.D. Fla.)

YOU SHOULD ONLY FILL OUT THIS FORM IF YOU DO <u>NOT</u> WISH TO PARTICIPATE IN THE PROPOSED SETTLEMENT OF THE ABOVE-REFERENCED CLASS ACTION AND DO <u>NOT</u> WISH TO RECEIVE ANY BENEFITS UNDER THE PROPOSED SETTLEMENT AGREEMENT.  IF YOU WISH TO PARTICIPATE IN THE SETTLEMENT, YOU DO NOT NEED TO FILL OUT THIS FORM.

If you wish to exclude yourself from the Settlement Class and opt-out of the proposed class action settlement, you must <u>complete</u>, <u>sign</u> and <u>mail</u> this opt out form postmarked on or before [OPT OUT DEADLINE] to class counsel at the address shown below:

Nichols Kaster, PLLP

Attention: Settlement Class Administrator

4600 IDS Center

80 South Eighth Street

Minneapolis, MN 55402

PLEASE NOTE THAT ANY OPT OUT FORMS THAT ARE NOT TIMELY SUBMITTED WILL NOT BE CONSIDERED.

### <u>REQUEST FOR EXCLUSION</u>

I have received the Notice of Proposed Class Action Settlement and Fairness Hearing in *Ulbrich v. GMAC Mortgage, LLC and Balboa Insurance Services, Inc.*, Case No. 11-CIV-62424 (S.D. Fla.).  Having read this notice and having considered the terms of the proposed class action settlement, I have elected to exclude myself from the Settlement Class and opt-out of the proposed settlement.  I understand that by excluding myself from the class and opting-out of this settlement, I will forfeit any rights to relief that I have under the proposed settlement agreement, but will keep my right to bring my own claims against Balboa Insurance Services, Countrywide Insurance Services, Seattle Specialty Insurance Services, and/or Newport Management Corporation (subject to applicable statutes of limitation).


_____
Signature


_____
Name (print)


_____
_____
Mailing Address


_____
Email Address


_____
Telephone Number


_____
GMAC mortgage account number